(No. 6718. November 14, 1939.)

ED McGARRIGLE, Respondent, v. GRANGEVILLE ELECTRIC LIGHT & POWER COMPANY, and STATE INSURANCE FUND, Appellants.

[97 Pac. (2d) 402.]

Clarence L. Hillman, for Appellants.

Bert H. Miller and Ariel L. Crowley, for Respondent.

AILSHIE, C. J.—Appellant Grangeville Electric Light & Power Company was constructing a dam on the South Fork of the Clearwater River east of Grangeville. The company was operating a mechanical hoist with a chain attached on end of a cable; they were excavating for a reservoir. August 22, 1918, respondent, then aged 49 years (employed by appellant), "was stooping over" putting the chain on a rock, and as the mast on hoist was raised the heavy chain caught him in the left side and back, "injuring kidney and spleen." As a result of the injuries received, operations were performed on respondent for the removal of the spleen and left kidney; there was also a general visceroptosis of the liver, rupture of the abdominal wall and the development of varicose veins. "First Notice of Injury and Preliminary Application," dated August 23, 1918, signed by both the claimant and the employer, was filed with the Industrial Accident Board August 26th. This was merely a *notice* of the accident and simply described when and how it occurred and informed the board and the state insurance fund that a swinging chain "hit his

back,'' and that the injury received was ''under short ribs on left side seems to bother bowels most.'' This notice was on a printed form furnished by the state insurance fund and opened with the following sentence:

''I hereby make application to the State Insurance Fund for the payment of money guaranteed on account of the injury to me hereinafter described, and hereby request that all forms and blanks necessary for the proper proof of my claim be furnished to me, free of charge.''

No further *notice* or *claim* appears ever to have been given or made.

The state insurance fund at once commenced the payment of hospital bills, doctors' and nurses' charges and compensation. January 24, 1919, the claimant (respondent) caused a letter to be typewritten and mailed to the state insurance fund which is as follows:

''Dear Sir:

''Calling your attention to my injury on August 22, 1918, while in the employ of the Grangeville Electric Light and Power Co., I beg to advise you that I have sustained a partial disability and will be unable hereafter to engage in my usual employment as heretofore.

''I have received your regular remittance, which I appreciate very much, but I would be glad to know upon what basis you would be willing to make final settlement with me, and if it would be possible for your department, if necessary, to make a further examination of my case with a view of making final settlement in the matter.

''I understand that you have before you the report of Dr. White in this matter, but if other information is desired by you I would be glad to have an investigation at an early date to arrive at a final settlement in the matter.

''Yours very truly,
''ED McGARRIGLE.''

While signed by claimant, this letter was written on the stationery of S. O. Tannahill, attorney at law, of Lewiston, and was evidently written after consultation with someone in the law office. January 28th the state insurance manager replied to the foregoing letter as follows:

''Replying to your communication of January 24th:

"We will pay you for total disability until your physician pronounces you as surgically healed at which time payment of compensation for your permanent disability will begin. We have not as yet received a Final Report from Dr. White stating that you have been discharged from further medical treatment. Dr. White should send in his Final Report and Fee Bill as soon as you are dismissed from his services.

"Our Medical Adviser, Dr. E. T. Biwer, is contemplating a visit to your section of the country in the near future and I will have him visit you and at that time he can ascertain the amount of your disability and compensation will be paid accordingly.

"Yours very truly,
"STATE INSURANCE MANAGER."

February 22, 1919, Dr. White of the Lewiston Hospital wrote the state insurance manager as follows:
"Mr. D. W. Church,
"State Insurance Manager;
"Boise, Idaho;
"Dear Sir:—

"Please find enclosed final Physicians Report and also Fee bill for Mr. Ed. McGarrigle an employee of 'The Grangeville Light & Power Co.' This Fee bill includes everything up to the time Mr. McGarrigle was surgically healed which was February 13, 1919. Mr. McGarrigle is still here in our hospital as he is unwilling to leave at present our report as you will notice shows Mr. McGarrigle discharged. We will call in a consultant as per your request and will keep Mr. Mc-Garrigle here pending your instructions.

"Mr. McGarrigle's right kidney seems unable to hold a steady balance in taking up the work of both kidneys also patient complains a great deal of pain in the bowels seemingly due to gas. We have been unable to get the bowels regulated since the operation without constant medication. I am unable to place a fair estimate on Mr. McGarrigle's partial disability; but will be glad to take this up with your Medical Advisor when he reaches Lewiston.

"Trusting that I may hear from you as soon as possible, I beg to remain

"Very truly yours,
"EDGAR L. WHITE."

March 6th following, Dr. Biwer, medical adviser to the state insurance fund, wrote the industrial accident board. His letter is as follows:

"3–6–19

"Industrial Accident Board,
Building.

*Re: Case of Ed. McGarrigle.*

"Gentlemen:

"This case has now reached the stage where cognizance must be given to the residual disability and the claimant provided with compensation in such amount, under the Workmen's Compensation Act, as is compatible with such residual disability.

"By virtue of the accident sustained by the claimant in the present case, he suffered the loss of two major organs of the body, each of large importance, the spleen and one kidney.

"In making an award in this case, it is necessary to attempt to determine as nearly as possible the effect that his loss will have on the claimant so far as his future is concerned.

"The spleen is classed by anatomists as a ductless gland, the function of which has not yet been definitely determined, the concensus of opinion, however, favoring the supposition that it is primarily concerned with the generation of the red corpuscles of the blood and there are many facts known with regard to the spleen which tend to give strong support to this theory. It is not deemed necessary to go into a detailed discussion of the physiology of this organ since such discussion would not be of material aid in adjudicating this case. Removal of the spleen is not a rare operation and the phenomena following such operation have been of various kinds, so that it is quite impossible to estimate what the results will be in any given case; however, in the majority of cases the lymph glands and bone marrow have appar-

ently assumed the functions of the spleen with no apparent adverse effect on the person.

"The kidneys are excretory organs designed for the elimination of the waste products of metabolism, and nature has provided generously in supplying two such organs for the use of the body against the possibility of injury or disease of one of them.

"Death would speedily result if both kidneys were removed and where but one is removed through disease or accident, the other undergoes compensatory hypertrophy under stress of the necessity of subserving the metabolism of the individual.

"Where such compensation of function is established, as it is in the majority of cases, the person suffering excision of one kidney may live to a well advanced age, but he would be considered a very poor risk for life insurance, so much so that policies are not written where the applicant has but one kidney.

"Kidneys through their function of elimination of waste products and poisons of the body are very apt to become diseased and that tendency is materially increased where but one kidney remains to perform this function and, of necessity, injury to the remaining kidney must result in death.

"No information is at hand to enable the writer to estimate the effect of the simultaneous loss of the spleen and one kidney but the probability is that the combined loss does not materially increase the jeopardy of the claimant.

"It can well be considered in this case that the claimant, Ed. McGarrigle, has suffered a fifty per centum loss in his defensive apparatus because of the many afflictions to which he is liable and any one of which would result in extreme disaster to him, or expressed in different terms, because of his present disability, he is not more than fifty per centum normal.

"Since total disability, under the provisions of the Workmen's Compensation Act, provides compensation to the person totally disabled of 400 weeks, and since, in the judgment of the writer, this claimant has fifty per centum of total disability, it is recommended that permanent disability

award of two hundred weeks' compensation be made in this case.

"Yours very truly,

"ETB:A

"——————————— M. D.

"Dr. E. T. BIWER, Medical Adviser."

Thereafter and on March 12th, D. W. Church, state insurance manager, filed with the Industrial Accident Board an official document entitled "SUMMARY AND AWARD Non-Fatal Case." This document reads as follows:

"Sim Form 66

State Insurance Manager

| | | |
|---|---|---|
| Risk No. —— | SUMMARY AND AWARD | Accident No. 3084 |
| Manual No. —— | Non-Fatal Case | Claim No. 455 |

[Received Mar. 12 1919 I.A.B.]

| | |
|---|---|
| Injured Person—Ed. McGarrigle | Employer—Grangeville Electric Light & Power Co. |
| Address—Lewiston, Ida. | Business— Address—Grangeville, Ida. |
| Occupation—Laborer | Premiums paid to— |

Character of Injury—Bruise over left side and back injuring kidney and spleen.

| | |
|---|---|
| Date of accident—8/22/18 | Actual Wages, $5/06 |
| Date able to resume work— | @ Wages, $ |
| Actual time lost—24 weeks 5 days | |
| Less first 7 days—23 weeks 5 days | Previous claim— |

AWARD OF PARTIAL PAYMENTS DURING DISABILITY

| Week | Payment to | Amount | Dis- ability | Recom- mendation | Approved | Date Paid | Voucher Number |
|---|---|---|---|---|---|---|---|
| | | | | Claim Clerk | C.M. Advisor | Com- missioner | |
| | | | | | | | Checked and Entered Actuary |
| 23 5/7 | 8/28–2/12 | 288/00 | | Compensation up to time pronounced surgically healed | | | T.T.D. |
| 2 2/7 | 2/12–2/28 | 29/57 | | " on total disability paid | | | 3/1/19 |
| 200 | | 2400/00 | | " allowed as per letter of recommendation | | | 3/6/19 |

| | | |
|-------|--------|----------------------------------------------|
| | 5/00 | Medical Benefits—Dr. P. J. Scallon |
| | 62/00 | " " —Dr. G. S. Stockton |
| | 10/00 | " " —Dr. F. P. Nourse |
| | 16/00 | " " —Hazel Calhoun—-Nurse |
| | 39/51 | Expense of trip from Lewiston to Boise & return |

| | | |
|-------|--------|----------------------------------------------|
| | 625/30 | Hospital & Medical Benefits—The White Hospital |

FINAL SETTLEMENT RECOMMENDATION:

| | | |
|-------|--------|----------------------------------------------|
| | 136/45 | Hospital Benefits—Imperial Hotel |
| | 5/00 | Ambulance—Central Garage |
| | 6/75 | Glanville Drug Co. |

| Total | 3594/01 |
|---------|---------|
| Paid | 1223/58 |

Balance 2370/43 to be paid at rate of 52/00 per month beginning April 1, 1919.

Recommended that injured man be allowed 52/00 per month for 50% of total disability for 200 weeks and 13/00 per month or 50% of 6/00 per week for the rest of his life after period of 200 weeks shall have been paid.

D. W. Church
State Insurance Manager

Approved 3/14/1919
Industrial Accident Board
Geo. H. Fisher Chairman

Investigated and award as above stated recommended
F. J. Clayton Approved and ordered paid

Secretary ——————— 19—--
Chief Medical Adviser
M. A. Atkinson
Claim Clerk JHG Chairman

| Date of Final Settlement | Voucher Sheet No. Number | Entered in Claim Ledger by |
|--------------------------|--------------------------|----------------------------|
| | | 3084 Reviewed and certified correct |

Actuary"

F. J. Clayton was then a member of the board.

April 6, 1919, the claimant wrote the board as follows:

> "Walla Walla Wash.
> 4–6–1919

"State Insurance Manager

"Dear Sir I have a account with the first national bank in lewiston and wish the check sent there if You can give them primission to sign the receits I have explained Matters but the bank wants a statement from you I think I am improving a little and there are some work that I could do and that is why I am moving around

> "Yours resp.
>
> ED McGARRIGLE"

Payments were made regularly, from the time the foregoing report was made by the state insurance manager and approved by the board, in accordance with the terms and provisions of the approved recommendation. January 8, 1923, claimant wrote the State Insurance Fund as follows:

> "1/8/1923

"Received your draft for final payment what the future hold for me I dont know I am living in a tent at present health conditions is as good as could be expected under the circumstances.

"Sincerely thanking you for fevours
received

"I remain yours truly

> ED McGARRIGLE"

Again May 10th claimant wrote the insurance manager, saying:

> "5/10/1923
> "Lewiston Idaho
> "Dear sir

as february 13 was four yaers from date of settlement and believing that the *thirteen dollars pr month* are due from that time I would like to hear from you as I certainly need all that is rightly incomming.

> "resp your
> "ED McGARRIGLE.

"Clarkston Wash
 "genl delivery" (Italics supplied.)

In reply to the last-quoted letter, the insurance manager wrote the claimant as follows:

"May 15, 1923 #455

"Mr. Ed McGarrigle,
 "General Delivery,
 "Clarkston, Wn.

"Dear Sir:

"Your letter of the 10th received.

"In reviewing your case we find that the entry of your award made on our pension record under past administration was for the two-hundred week period only, no mention being made of the payment of $13.00 per month after the expiration of the two hundred weeks. Therefor it was considered that final payment of your award had been made the 20th of December, last. The two hundred weeks expired on December 17, 1922, and we are therefor starting the payment of the $13.00 per month beginning as of December 18th, 1922.

"Enclosed is our draft for $70.40 in payment of all compensation to June 1st, 1923, computed as follows:

| | |
|---|---|
| Dec. 18th to Dec. 31, 13 days, | $5.40 |
| Jan. 1 to June 1, 5 months | 65.00 |
| | $70.40 |

"Payments will be continued hereafter at the rate of $13.00 per month beginning with July 1st.

"Thanking you for calling this error to our attention, We are,

"Yours truly,
"STATE INSURANCE FUND
"By
 Manager

"CJS
"Enc. dft"

The payments of $13 per month were continued regularly from that time to February 28, 1939, when claimant, through his attorney, filed a "Petition for Review," alleging that he was totally disabled and as such was entitled to compensation for total permanent disability; that he had never had a hearing before the board and that the board was,

March 14, 1919, without jurisdiction or authority to make an award. The matter was heard on the petition and the board held that no valid award had ever been made, that claimant's injuries were total and permanent, and made an award accordingly. The matter is here upon the appeal of the Grangeville Electric Light & Power Co. and the state insurance fund.

■ There is no controversy now and never has been as to the happening of the accident and resultant injury; both facts are admitted. The notice of the accident was joined in by both the employer and employee the next day after the accident, in accordance with the requirements of secs. 30 and 31 of the compensation act (chap. 81, 1917 Sess. Laws; secs. 43-1202 and 1203, I. C. A.) Under sec. 31, "The notice may include the claim" but that is unnecessary. It may be, and generally is, made separately and later. In this case it would have been impossible, at the time of giving the notice, to detail or foretell the character or extent of the *injury* which would result. There was, as far as the record discloses, never any dispute or controversy between the claimant and the employer or insurer, nor between the claimant and the board, as to the occurrence of the accident, the nature and extent of the injury or the amount or degree of disability which resulted *until February, 1939* (20 years after the accident), when claimant's present petition for review was filed.

No complaint or unadjusted claim was pending during any of this lapse of time; the board had exercised its authority and jurisdiction in approving the recommendation of the medical adviser to the manager of the state insurance fund and in awarding compensation. That action on the part of the board appears to have met the approval of both the employee and the employer as well as the state insurance fund, and it has been accepted and payments have been made and received in accordance therewith for these 20 years without dissent or complaint of any kind, during which time $5,257.66 has been paid in monthly benefits, besides medical, nurses' and hospital charges.

■ Under these conditions and circumstances it seems clear to us that the document heretofore referred to as

"Summary and Award Non-Fatal Case," being the recommendation of the state insurance manager, approved by the industrial accident board, had been accepted and considered by all parties interested as the *order and award* of the board duly and regularly made in this case; and it is now too late for any of the parties to be allowed to question its regularity. As to the jurisdiction of the board to make the order, there is no room for serious doubt. Neither can there be any doubt but that claimant knew and understood at all times the nature, character and extent of the order that had been made under which he was receiving benefits and compensation. The above-quoted correspondence abundantly establishes that fact. It would be a dangerous and hazardous precedent to allow such orders to be opened up after so long a time and under such circumstances. This surpasses all known statutes of limitations and extends far into the field of laches and stale claims.

In our consideration of this case, we have not overlooked the cases of *Eldridge v. State Penitentiary*, 54 Ida. 213, 30 Pac. (2d) 781, *Hanson v. Independent School Dist.*, 57 Ida. 297, 65 Pac. (2d) 733, and other Idaho cases cited by respondent. We entertain no purpose whatever of departing in any respect from the rules announced in those decisions. We are convinced, however, that the instant case is very different in its facts from any one of the cases cited and is not controlled by the rules there considered.

The argument has been advanced here that claimant is now an old man, badly in need of assistance and that $13 per month is not sufficient to afford him subsistence. This is all no doubt true but that furnishes no legitimate reason for the making of an award that is not justified by the statute. The Workmen's Compensation Act is purely a product of the legislature and does not contemplate affording anyone an adequate livelihood but is rather based on a schedule of a compensation arbitrarily fixed for certain specified injuries. That schedule seldom, if ever, affords the workman sufficient compensation to recompense him for his loss of earning power or to afford him a livelihood. The schedule of compensation is simply the legislative fiat which accident boards and courts cannot alter.

The proceedings on which the present order was made are fully as irregular and summary as those on which the original order was made. Here no evidence whatever was introduced except the testimony of the claimant himself and a neighbor who had seen him intermittently since 1922. No medical testimony was introduced. The record, however, of the original proceedings, comprising the correspondence, the reports of the doctors, recommendation of the medical adviser, and the award as above set out, was introduced. Time had not changed or improved them. It should be remembered that these had all been taken *ex parte* and constituted the evidence on which the first order was made, which it is now claimed was *ex parte* and without jurisdiction. In passing, it should be remembered that the Workmen's Compensation Act says: "the procedure under this act *shall be summary and simple*" (italics supplied) and that it contemplates, at least in part, *ex parte* investigation by the board. (See secs. 43–1401, 43–1403–4.) There was no legal evidence before the board at this recent hearing sufficient to establish the fact that claimant had suffered a *total disability prior to the time he wrote his letter of May 10, 1923*, making inquiry about his monthly payments and asking that they be continued; nor did he make any complaint at that time of total disability.

There is evidence in the record which may be deemed sufficient to establish the fact that claimant *is now totally disabled;* that is no doubt the combined result of the accident and advancing age.

In the light of the record that is presented to us, and under the peculiar circumstances of the case, we think there is sufficient showing to support a finding as to *change in condition* from partial disability to total permanent disability at this time and that the order may properly be affirmed as to the weekly payments of $6, dating from the filing of claimant's petition (Feb. 28, 1939) for a review on the theory of changed condition. The rest of the order should be reversed and vacated, and it is so ordered. No costs awarded.

Budge, Givens and Holden, JJ., concur.

MORGAN, J., Dissenting.—The right of an employee to recover compensation for an accident arising out of and in the course of his employment; the procedure for the recovery thereof; the defenses thereto, and all phases of the premises have been fixed by statute. (I. C. A., sec. 43–902.) In violation of the statutes of Idaho governing this subject the industrial accident board, March 14, 1919, without notice to the claimant, without hearing, without finding of fact, ruling of law or order of award, approved a recommendation of the manager of appellant, state insurance fund, that respondent be paid half the amount which the undisputed facts now show is due him for total, permanent disability from injury by accident arising out of and in the course of his employment. According to statutes, heretofore construed in a similar case, such payment is neither final nor conclusive on respondent, because the public policy of the state, announced by the legislature, forbids payment of a claim of this kind with less money than the injured workman is by law entitled to.

Section 43–1005 is as follows:

"No contract, rule, regulation or device whatsoever shall operate to relieve the employer in whole or in part from any liability created by this act, other than as provided in sections 43–1006 and 43–1108."

Neither sec. 43–1006 nor 43–1108 has any bearing on this case. Section 43–1402 is:

"If the employer and the injured employee reach an agreement in regard to compensation under this act, a memorandum of the agreement shall be filed with the board and, if approved by it, thereupon the memorandum shall for all purposes be enforceable under the provisions of section 43–1410 unless modified as provided in section 43–1407. Such agreements shall be approved by the board only when the terms conform to the provisions of this act."

In this case the employer and injured employee did not reach an agreement in regard to compensation for the latter's permanent disability. No memorandum of such agreement was filed with the board, nor approved by it, and the recommendation of the manager of appellant, state insurance fund, which the board did approve, did not provide for payment of

enough money to respondent to conform to the provisions of the law.

In the majority opinion the court calls attention to *Eldridge v. Idaho State Penitentiary*, 54 Ida. 213, 30 Pac. (2d) 781, and *Hanson v. Independent School Dist.*, 57 Ida. 297, 65 Pac. (2d) 733, and says: ''We entertain no purpose whatever of departing in any respect from the rules announced in those decisions.'' Whatever the purpose of the court may have been in so doing, it violates the statutes, in this case, which it followed in the Hanson case, and upholds the board in approving the payment to an injured workman of less than his due, which it refused to approve in that case. This case can neither be distinguished from nor reconciled with our former decision and is a long step in the wrong direction.

In the majority opinion, referring to the recent action before the board, it is said:

''Here no evidence whatever was introduced except the testimony of the claimant himself and a neighbor who had seen him intermittently since 1922. . . . . There was no legal evidence before the board at this recent hearing sufficient to establish the fact that claimant had suffered a *total disability prior to the time he wrote his letter of May 10, 1923*, making inquiry about his monthly payments and asking that they be continued; nor did he make any complaint at that time of total disability.

''There is evidence in the record which may be deemed sufficient to establish the fact that claimant *is now totally disabled;* that is no doubt the combined result of the accident and advancing age.''

Based on this statement of the facts established the court holds:

''We think there is sufficient showing to support a finding as to *change in condition* from partial disability to total permanent disability at this time and that the order may properly be affirmed as to the weekly payments of $6, dating from the filing of claimant's petition (February 28, 1939) for a review on the theory of changed condition.''

The testimony referred to, of claimant and his neighbor, is all the evidence in the record tending to establish perma-

nent, total disability, and it is undisputed. It is ample to sustain the board's ruling wherein respondent was awarded full compensation for permanent, total disability. Section 9, article 5, of the constitution, as amended and ratified at the general election in 1936, provides:

"On appeal from orders of the Industrial Accident Board the court shall be limited to a review of questions of law."

The decision in this case is a violation of that constitutional provision.

The evidence which justifies the court in holding, as it does, that the order should be affirmed as to the weekly payments of $6, from February 28, 1939, also consists of the testimony of claimant and his neighbor. However, that holding should not be based on the statement that the changed condition is "the combined result of the accident and advancing age." Workmen's compensation cannot be made to take the place of old age pensions. That testimony is equally sufficient to support the entire order of the board which awarded to respondent, in addition to $6 a week, compensation in the sum of $3,572.64, and it should be affirmed.

Petition for rehearing denied.