277 P.2d 287

In the Matter of the Application of IDAHO HOSPITAL ASSOCIATION, For Increase in Hospital Room Rates.

No. 8049.

Supreme Court of Idaho.

Nov. 24, 1954.

Kibler & Beebe, Nampa, for appellant.

Walter M. Oros, Boise, for St. Alphonsus Hospital.

Carver, McClenahan & Greenfield, Boise, for Idaho State Federation of Labor.

Robert E. Smylie, Atty. Gen., for Industrial Accident Board.

Glenn A. Coughlan, Boise, for State Insurance Fund.

E. B. Smith, Boise, for Idaho Compensation Co.

McCarthy & Feeney, Lewiston, for North Idaho Medical Service Bureau.

Elder & Elder, Coeur d'Alene and Brown & Peacock, Kellogg, amici curiæ.

GIVENS, Justice.

Pursuant to the remand in Application of Idaho Hospital Ass'n, 73 Idaho 320, 251 P.2d 538, the Industrial Accident Board January 12, 1953, called for a pre-trial conference January 23, 1953, notifying and giving all interested parties and their attorneys the right to comment upon the

queries presented by the Board, summarized as to what order the then record before the Board would support and justify as to hospital rates; obligatory on the employer, and giving full opportunity for elaboration and suggestions relative to the entire matter by all parties.

The only result therefrom was appellant's indication that if the Order did not comply with its desires, it would appeal, which it had the right to do and has done; again somewhat questioning the overall and general authority or jurisdiction of the Board to fix hospital fees and charges, though this proceeding was initiated by appellant before the Board for that very purpose, specifically challenging the Statewide ceiling and the grouping of hospitals in communities, and the fees allowed the individual hospitals where such are less than the regular charges of such hospitals.

While we have again considered the holding as to the general jurisdiction of the Board announced in the above case, we continue to believe that such pronouncements were correct and do not need further consideration, justification or discussion.

After the pre-trial conference, the Board first seriatim extended the time within which any interested party could present supplemental pleadings or record to April 1, 1953 and thereafter, indefinitely.

Individual so-called petitions and statements by respective hospital members of appellant Association and others, joining in the original petition or acquiescent to those proceedings and describing the nature of the ownership and operation of the respective hospitals, services available and rendered, and the regular rates and fees therefor, and asking individual hearings, were filed, which added but little to the composite picture, except to bring their rates down to date. From these several statements, the Board prepared a chart of charges.

July 15, 1953 the Board made the following Order:

"To Hospitals and Sureties and all parties and attorneys in pending Hospital Rates Controversy:

"The enclosed Hospital Regulations and Rates, effective August 1, 1953, have this day been adopted by the undersigned.

"Industrial Accident Board
B. W. Oppenheim
Leo H. Houtz
C. R. Hunter
"Attest:
Joseph M. Smith
Secretary"
(Seal)

detailing the table of fees chargeable.

The pertinent and controlling statute is Section 72-307, I.C.,[1] authorizing the Board

---

[1] "The employer shall provide for an injured employee such reasonable medical, surgical or other attendance or treatment, nurse and hospital service, medi-

to regulate the medical and hospital charges for which the employer and the employer's insurance carrier are liable, Whittaker's Case, 319 Mass. 582, 66 N.E.2d 785, at page 788, construed in a cognate field to be a broad power, Western Hospital Ass'n v. Industrial Accident Board, 51 Idaho 334, 6 P.2d 845. The fees and charges for such services being "limited to such charges as prevail in the same community for similar treatment of injured persons of a like standard of living when such treatment is paid for by the injured person. In determining what fees and charges are reasonable, the board shall consider the increased security of payment afforded by this act."

■ The liability to furnish proper and adequate medical and hospital services to an injured employee is a positive liability resting upon the employer, guaranteed by the insurance carrier.

■ This Court's review of the fees and charges fixed by the Board, as on all appeals from an order of the Board, is by Const. Article V, Section 9, limited to a review of questions of law. In other words, to determine whether or not the Board has regularly pursued its authority. McGarrigle v. Grangeville. Elec. L. & P. Co., 60 Idaho 690, 97 P.2d 402; Totton v. Long Lake Lumber Co., 61 Idaho 74, 97 P.2d 596.

■ Appellant complains that the Order of the Board is arbitrary; that there was insufficient evidence to support the State-wide ceiling and charges and fees in individual hospitals when less than the regular charges of the respective hospitals; that the Order was made without consideration of the varying factors in the different communities and kinds of hospitals, and that the Board has improperly applied the comprehension of the word "community." The word "community" has a flexible meaning, taking color and meaning from the context and the Board gave detailed consideration to the individual hospitals—certainly an application of the statute that is fair to the hospitals and not an expanded or unwarranted concept of "community" as connoted in the statute.

cine, crutches and apparatus, as may be required or be requested by the employee immediately after an injury, and for a reasonable time thereafter. If the employer fails to provide the same, the injured employee may do so at the expense of the employer. All fees and other charges for such treatment and services and compensation therefor shall be subject to regulation by the board. The pecuniary liability of the employer for the treatment and other service herein required shall be limited to such charges as prevail in the same community for similar treatment of injured persons of a like standard of living when such treatment is paid for by the injured person. In determining what fees and charges are reasonable, the board shall consider the increased security of payment afforded by this act."

The Order is flexible, was only for a year, specifically providing that:

"The rates herein approved or fixed are subject to modification as circumstances require. Under the law all persons interested, concerned or affected may at any time petition for a reconsideration of any and all of them. However, the board in practical administration has found that changes in medical service rates should ordinarily be considered not oftener than annually."

While the Board has separated the hospitals into seven communities or sections or groups, within such seven groups the Board has differentiated as to the respective hospitals in each group; thus, has given particular attention to the individual hospitals.

This Order leaves operative Section 72-308, I.C.

The fact that the fees and charges approved are in some instances less than the regular charges of the particular hospital, does not of itself, prove the Board has not regularly pursued the authority granted by the statute, because under the statute there are three variables: first, the charges that prevail in the same community for similar treatment of the injured persons; second, like standard of living; and third, the increased security of payment. Communities, though geographically apart, may be similar as to factors affecting hospital charges.

It is to be remembered the Board had before it the extensive transcript of the hearing before the Honorable Charles F. Koelsch, former District Judge and referee in the matter, and his conclusion that reductions of 2.33% of the regular charges would be justified.

The hospital members of the Association, of course, are not component parts of one organization. They are individual hospitals, without monetary connection with each other, though all designed to serve the same purpose. The rates in one hospital, if less than its out-of-pocket cost of doing service, cannot be aided by rates in other hospitals which are more than their out-of-pocket cost of service. By way of general illustration of the percentage reduction made by the Board, the Bonner General Memorial Hospital for Bonner County in Sandpoint, shows regular charges of $10 for ward accommodation where three or more patients are housed; $11 for semi-private rooms, accommodating two patients, and $13 for a private room. The fees allowed by the Board are less on all three, being $9.50 for the ward; $10.50 for semi-private room, and $12 for the private room, a reduction of 50¢ per day for the first two classes and $1 a day for the third, or a reduction on the ward service of 5%, semi-private, 4.54% and on the private room, 7.69%.

A further comparison of the regular charges chart and the fees fixed by the

Board shows the reductions have been mostly in connection with the larger hospitals. Such differentials were probably considered justified by the Board to some extent on the thought that the larger hospitals have additional, enlarged and more extensive apparatus and facilities for specialized treatment for which additional charges evidently are made, which—as we understand the record—are not covered by the room charge, and that the larger hospitals could absorb such deductions without material detriment.

■ The following principle is of general application and is particularly pertinent herein and sustains the action of the Board against the attack in this appeal:

"The Industrial Accident Board, specializing as it does in the hearing of industrial accident cases, must be presumed by reason of its experience to be able to judge the causative factors in a particular case on both medical and non-medical evidence." Walker v. Hogue, 67 Idaho 484, at page 489, 185 P.2d 708, at page 710; Kernaghan v. Sunshine Mining Co., 73 Idaho 106, at page 109, 245 P.2d 806. True, the Board therein was passing upon regular accidental injury cases.

The Board is the administrative agency having overall supervision and activation of workmen's compensation under the statute and all phases thereof. By reason of holding hearings throughout the State, its knowledge of the care and treatment required by injured workmen, and the care and treatment and facilities for treatment available in the respective hospitals of the State, and the constant stream of cases coming before it, the Board thus is in a strategic position practically, as well as authoritatively by reason of the statute, to adjudge what are reasonable fees and charges.

Idaho is, indeed, to be congratulated that there are hospitals in so many of the towns of the State and the high standard of treatment and care thus available to the sick and the maimed.

The flexible nature of the Order of the Board, its probationary period, the opportunity for review and further consideration, with ensuing chance for modification in particular and peculiar circumstances, and the breakdown within the seven communities as to the individual hospitals therein, indicate the Board gave careful and judicious scrutiny to the problem; analysis of the statute, and evaluated and harmonized the three variables in the statute; that the Board was also mindful of the underlying facts that the fees and charges by the hospitals, public or private, must enable them to continue quality operation on a sound financial basis.

■ Though many conclusions could be drawn from the entire record, that was initially before the referee and supplemented by subsequent petitions, much must be left to the sagacity, wisdom and experience of the Board. It is not what other

order might have been made, but whether this Order is sustainable.

 We do not say any fees or charges fixed by the Board would necessarily be reasonable, but from the record before the Board herein and as before us, after carefully considering all the arguments in the briefs and orally of the respective parties and amici curiae, we cannot say the Board has not regularly pursued its authority.

Many states have a statute somewhat similar to ours with regard to the Board limiting medical and hospital fees and charges to those prevailing for similar treatment in the community where the injured employee resides and of like living standards, Vol. 10, Sec. 2001, page 7, Workmen's Compensation Law by Schneider, but no case directly in point has been cited nor have we found any, except Covey v. Honiss Oyster House, 117 Conn. 282, 167 A. 807, which, so far as is relevant, supports our conclusion herein.

Appellant's brief, page 11, states as follows:

"We desire to inform this Court that since perfecting this appeal, and the subsequent preparation of the record, that counsel for the appellant have been informed in writing that St. Luke's Hospital of Boise, Idaho, and St. Alphonsus Hospital, likewise of Boise, do not desire to further participate herein as *individual hospitals* as named and set forth in the Notice of Appeal, and have indicated that said institutions desire to privately negotiate with the Board as to hospital room rates in Workmen's Compensation cases in the Boise community.

We feel certain that upon bringing this phase of the matter to the attention of Court in this manner, that such hospitals will not be considered or dealt with in this proceeding as individual hospitals, and will not be mentioned as such herein, as the only present interest of said hospitals is collectively as members of the Idaho Hospital Association, and not as individual institutions."

The Notice of Appeal herein was addressed to the Industrial Accident Board and the Attorney General as in behalf of the Hospital Association, "and in behalf of certain of its member hospitals, severally as follows, to-wit:

Lake City General Hospital, Coeur d' Alene, Idaho;

Wardner Hospital, Wardner, Idaho;

Bonner General Memorial Hospital, Sandpoint, Idaho;

Wallace General Hospital, Wallace, Idaho;

St. Josephs Hospital, Lewiston, Idaho;

Gritman Memorial Hospital, Moscow, Idaho;

St. Alphonsus Hospital, Boise, Idaho;

St. Lukes Hospital, Boise, Idaho;

Caldwell Memorial Hospital, Caldwell, Idaho;

Mercy Hospital, Nampa, Idaho;

Samaritan Hospital, Nampa, Idaho (Nazarene Missionary Sanitarium & Institute) * * *."

The supplemental petitions disclose that all of the hospitals listed in the rate chart stated they were members of the Idaho Hospital Association, except St. Alphonsus of Boise, which originally appeared through its own attorney; the Caribou County Hospital, which did not answer that particular question, but did join in the original petition with the Association; the Community Hospital at Bonners Ferry, which by correspondence indicated its desire to be included in and acquiesce with representation by appellant Association; the Madison Memorial Hospital at Rexburg, which indicated it would join in appellant's efforts, and the Gritman Memorial Hospital at Moscow, which merely sent the information as to its rates to the Board and asked for a reduction.

 The internal membership in the Hospital Association is not, so far as we can see, a matter for the Board or us. Though proceedings before the Board are to be informal, nevertheless, the matter of parties should be a matter of record both before the Board and the Court.

As stated by the referee in his report, no method or procedure is set up by the statutes for the regulation of hospital fees and charges by the Board except, of course, in individual cases. Nevertheless, we apprehend and consider the Board has jurisdiction to fix, as indicated in the previous opinion, fees and charges for all the hospitals in the State in industrial accident cases and while, under the terms of the Order approved herein, any hospital or other interested party may seek a change thereof or relief therefrom before the Board, until modified, the Order of the Board stands as to all the hospitals of the State.

 Where a party has specially appeared in a proceeding before the Industrial Accident Board and/or herein by attorney, change of party status should be through its attorney and a matter of record before the Board and herein.

The Order of the Board is affirmed. Costs awarded to respondents.

PORTER, C. J., and TAYLOR and KEETON, JJ., concur.

THOMAS, J., sat, but did not participate in the opinion.