291 P.2d 859

John Anders ANDERSON, Claimant-Appellant,

v.

POTLATCH FORESTS, Inc., Employer, and Workmen's Compensation Exchange, Surety, and Industrial Special Indemnity Fund, Defendants-Respondents.

No. 8293.

Supreme Court of Idaho.

Dec. 13, 1955.

Paul C. Keeton, Lewiston, for appellant.

Elder & Elder, Coeur d'Alene, for Potlatch Forests, Inc., and surety.

Graydon W. Smith, Atty. Gen., and Nash J. Barinaga, Asst. Atty. Gen., for Industrial Special Indemnity Fund.

ANDERSON, Justice.

This is a workmen's compensation case presenting the problem of the proper construction of the industrial special indemnity fund statutes in connection with other pertinent statutes.

The facts which give rise to the problem are not in dispute, other than that the transcript and the briefs contain several conflicting dates. The pertinent facts are brief and as follows:

July 11, 1949, appellant was employed by Potlatch Forests, Inc., near Avery, Idaho,

when he received a personal injury to his body and particularly to his right hand and arm, caused by an accident arising out of and in the course of his employment. At that time he was 63 years of age, and was earning $64.74 per week. Prior to his injury he had lost the use of his left hand, as far as using it in a gainful occupation was concerned.

Following the accident of July 11, 1949, appellant was placed in a hospital at Coeur d'Alene, Idaho, under the care of Dr. O. M. Husted, where several bone grafts were performed. July 20, 1949, notice of injury and claim for compensation were filed with the industrial accident board. November 22, 1949, he fell out of the hospital bed and broke both legs. Neither the surety nor the doctor notified the industrial accident board of any of the details of the November 22nd accident, nor did they nor the employer at any time advise the board that appellant suffered a permanent total disability.

May 8, 1950, appellant was examined by Dr. A. O. Adams, who pronounced him surgically healed and ready to be rated for permanent partial disability, although he still walked with a crutch. September 6, 1950, Dr. Husted, the attending physician, made a final report fixing May 8, 1950, as the date appellant was surgically healed and giving him a permanent partial disability rating of 75 per cent as compared to amputation of the right arm at the shoulder and 10 per cent as compared to amputation of the right leg at the knee.

September 12, 1950, a compensation agreement was entered into by appellant and his employer and its surety, based on said rating. It was submitted to the industrial accident board, and approved by the board September 19, 1950. Under the agreement, appellant was to receive compensation in a specified amount for a period of 195 weeks for permanent partial disability. The transcript discloses that he received payments to April 1, 1953. This does not correspond with the number of weeks he was to be paid, and the record fails to disclose whether or not voluntary advancements were made so as to complete the payments earlier. The board, in part 2(7) of its order, states that the discrepancy "is presumed to be due to voluntary advances."

June 17, 1953, the board received from appellant a letter dated June 15, 1953, requesting additional compensation for the injuries to his arm. The board treated this as an application for a hearing, and set it for October 21, 1953. After considerable correspondence, the hearing date was cancelled, and the board advised appellant to consult an attorney relative to his rights under the industrial special indemnity fund.

Appellant secured an attorney, and an amended petition for a hearing was filed May 10, 1954, joining said fund and its custodian, the treasurer of the State of

Idaho. Answers were filed, wherein the employer and its surety contended that there was no change of appellant's condition since the compensation agreement September 12, 1950, and further that the four-year statute of limitations applied and barred appellant's claim. The respondent fund contended that no notice of the injury was given as required by I.C. § 72–402 within 60 days, nor action brought within one year; that nearly four years and 10 months elapsed after appellant's initial injury July 11, 1949, before appellant filed his amended petition May 10, 1954, and therefore he is barred from recovery by I.C. § 72–607; that appellant suffered no physical loss within the contemplation of I.C. § 72–315.

June 9, 1954, the board heard the matter, and on January 19, 1955, denied the appellant any relief. Appellant then appealed.

█ A review of the evidence discloses that there was no change in condition of appellant, as contemplated by I.C. § 72–607, and therefore such question is not an issue in the case. There is no evidence showing that appellant is seeking further compensation from the employer or its surety, and appellant does not urge any claim against them; neither is it shown whether all payments have or have not been made under the compensation agreement of September 12, 1950, nor is there any pleading or evidence seeking to set aside such agreement. The board was therefore correct in denying further compensation against the employer or its surety.

█ The joining of the treasurer of the State of Idaho as a party defendant in this action was not necessary, as the treasurer is custodian of the industrial special indemnity fund. All disbursements from said fund shall be paid by the treasurer upon orders of the industrial accident board, drawn on the treasurer to be charged against such fund, I.C. §§ 72–314 and 72–315; so the treasurer is not a necessary party any more than a bank would be in an ordinary action against an individual who had money in the bank. It therefore follows that it was not necessary to give notice to the state treasurer of the injury as urged. The only active parties therefore remaining in the present action are appellant and respondent fund, sometimes referred to as "the second injury fund" and for brevity herein as "the fund."

The fund relies on the case of Tortoriello v. Toohey, 121 N.J.L. 604, 3 A.2d 805, affirmed in 123 N.J.L. 202, 8 A.2d 291, in which the court held that the New Jersey commissioner of labor was correct in dismissing the petitions of three claimants for compensation from a fund similar to the industrial special indemnity fund of this state, on the ground that the petitions were filed more than two years after the last payments of compensation to the claimants.

However, the later case of Banks v. Toohey, 124 N.J.L. 435, 12 A.2d 853, explains the ruling in the Tortoriello case as based on a specific statute which provided that applications for benefits from the fund

must be filed within two years after the date of the last payment of compensation by the employer or the insurance carrier. In effect, the Tortoriello case held that the statute applied to certain claims filed before its passage. Hence the holding is not applicable to the case before us, as Idaho does not have a similar statute.

■ Appellant's letter of June 15, 1953, seeking additional compensation, received by the board June 17, 1953, was within four years of the accident, I.C. § 72–407, and the amended petition of May 10, 1954, reverts back to the earlier request.

The reason the statute of limitations relative to giving notice and making claims within a certain time after the injury does not apply is that payments from the second injury fund are made only after completion of payments by the employer, which payments may extend beyond the period of the aforesaid statute of limitations. Further, the fund is administered by the board, and notice to the board would be notice to the fund.

■ The board must take judicial notice of its own files pertaining to a case. This case had numerous medical reports and correspondence disclosing the facts of the case and the appellant's condition.

■ The fund contends that appellant does not come within the terms of I.C. § 72–315, in that neither his right hand nor arm had been amputated or severed from his body, and that "physical loss" means that this must be done. We do not so construe the statute. The evidence is uncontradicted that appellant is and has been at all times since July 11, 1949, permanently and totally disabled for any industrial employment, and that as to his ability to work at a gainful occupation, he is unable physically to use either his right hand and arm and his left hand, due to a prior injury. An arm is an arm in physical contemplation under I.C. § 72–315 only when it can be used as an arm. When it cannot be used as such it becomes an inert, inanimate and useless organ.

This court, in the case of Roberts v. Dredge Fund, 71 Idaho 380, 232 P.2d 975, 976, held that

" * * * Where power company employees, while changing transformer fuse in substation which supplied power required to operate channel dredge, caused a short and attendant loud noise, explosion and ball of fire, and dredge employee, standing outside fence around substation, was immediately killed by stoppage of heart resulting from shock to nervous system, there was accidental injury and 'violence to physical structure of employee's body', * * * and death was compensable."

At page 387 of 71 Idaho, at page 980 of 232 P.2d the opinion points out that the physical structure of the body includes blood, nerves, fibers and convolutions. In

the case now before us, there was physical injury and loss of these by appellant.

This court, in McDonald v. Treasurer of State of Idaho, 52 Idaho 535, 16 P.2d 988, ruled that an employee who had lost nearly all use of his right eye in a prior accident, its visual acuity being reduced to eight per cent, without losing the eye itself, and who later lost his left eye entirely, had by the prior accident "lost one eye" within the provisions of sec. 6234b, Idaho Compiled Statutes, as amended in 1927. The pertinent parts of C.S. § 6234b are identical with I.C. § 72–315.

The court further held, 52 Idaho at page 541, 16 P.2d at page 990:

" * * * the employer and its carrier are liable to the employee only for compensation for permanent partial disability caused by the accident, even though total permanent disability results therefrom due to the employee's previous physical impairment, and, where total permanent disability results, the difference between compensation therefor and the amount paid by the employer and its carrier is payable to the employee out of the industrial special indemnity fund provided by C.S. § 6234a." (Now I.C. § 72–314.)

The industrial special indemnity fund, in its brief, contends that appellant was entitled to recover for total permanent disability, but from his employer only. The respondent cites three code sections and two cases in support of this contention, i. e., I.C. §§ 72–310, 72–311, 72–323; Wells v. Potlatch Forests, Inc., 67 Idaho 420, 183 P.2d 202, and Bishop v. Morrison-Knudsen Co., 64 Idaho 806, 137 P.2d 963.

I.C. § 72–310 sets forth the method of computing compensation for total disability. I.C. § 72–311 provides that certain injuries shall be deemed total and permanent, in the absence of conclusive proof to the contrary. Listed is loss of both hands at or above the wrist. I.C. § 72–323, inter alia, covers deductions for pre-existing injuries and infirmities.

Except as provided in section 72–311, Idaho Code, § 72–323 provides for deductions for pre-existing injuries and infirmities; also, I.C. § 72–315 has special application to total and permanent injuries brought about by the circumstances set out in said section of the statute.

The code sections to which respondent refers all relate to injuries occurring in a single accident, whereas the second injury statute relates to compensation for the disability caused by the second injury, which, taken together with the effects of the first injury—which may or may not be related to industry—nevertheless causes the permanent total disability.

In the Wells case, supra, the claimant was awarded compensation for total disability for blindness in both eyes. There was a conflict in the evidence as to whether the claimant lost his sight from the indus-

trial accident or by disease, *but the accidental injury to both eyes occurred at the same time.*

The second case cited by respondent on this point, Bishop v. Morrison-Knudsen Co., supra, holds that I.C. § 72–323, the code section authorizing deduction for pre-existing injuries, does not apply in a death case; there is no similarity in the facts or the theory of the Bishop case and the present one.

Appellant was paid for partial permanent disability, under his agreement with the employer and its surety, when in fact he was totally and permanently disabled. However, this falls squarely within the provisions of the statute, I.C. § 72–315, in effect at the time of the injury:

"* * * the employer shall only be liable for the permanent partial disability caused by the subsequent injury: * * * in addition to compensation for permanent partial disability * * * the disabled employee shall be paid by the industrial accident board, out of the funds in the industrial special indemnity fund, the remainder of the compensation that would be due the injured employee for permanent total disability if the subsequent injury itself had been the cause of his permanent total disability * * *."

That part of the order denying compensation against the employer and its surety is affirmed. That part denying compensation from respondent industrial special indemnity fund is reversed, and the cause remanded to the industrial accident board with instructions to proceed in conformance with this opinion and determine appellant's dependents and the amount of compensation he is entitled to from respondent industrial special indemnity fund, and to enter an award therefor.

Costs to appellant against respondent fund.

TAYLOR, C. J., PORTER and SMITH, JJ., and J. McQUADE, District Judge, concur.