644 P.2d 331

**Wesley SINES, Claimant-Appellant,**

v.

**Gary APPEL, Employer, and Industrial Indemnity Company, Surety; and Industrial Special Indemnity Fund, State of Idaho, Defendants-Respondents.**

**No. 13602.**

Supreme Court of Idaho.

April 19, 1982.

---

Paul C. Keeton, Lewiston, for claimant-appellant.

Michael E. McNichols, Orofino, for defendants-respondents Gary Appel, employer, and Industrial Indemnity Co., surety.

Samuel Eismann, Coeur d'Alene, for defendant-respondent Industrial Special Indemnity Fund of the State of Idaho.

McFADDEN, Justice.

In October 1978 claimant Wesley Sines applied to the Industrial Commission for the modification of an award previously entered on January 6, 1978, by the Industrial Commission. The original award sought to be modified arose out of a compensation agreement entered into on December 27, 1977, between the claimant and the employer's surety, Industrial Indemnity. At this time, claimant had been represented by an attorney who subsequently died, and only after that did his present counsel commence representation of him and seek modification of the previously entered award.

The basis for the compensation agreement arose out of an industrial accident which occurred on September 23, 1975, at which time claimant was employed by Gary Appel at falling timber. On that date claimant stepped in a hole and fell, twisting his back. He was treated for this injury by Dr. Thurston of St. Maries, Idaho, and thereafter referred to Dr. Lynch and Dr. Cooke, both neurosurgeons of Spokane, Washington, as well as other physicians.

Beyond the impairment to his back arising from the industrial accident, the claimant's physical condition was also impaired by a preexisting disease—multiple sclerosis. The claimant has suffered from nuerological disorders associated with multiple sclerosis since 1963 and continues to suffer from those disorders presently.

In response to letters from the employer's surety, the aforementioned physicians all rated the extent of the claimant's disability. On July 6, 1977, Dr. Thurston rated the claimant as having a permanent partial disability equivalent to 20% of the whole man. In his report Dr. Thurston observed that the evaluation was complicated by the existence of disorders associated with multiple sclerosis. He also stated in his physician's final report that the claimant is unable to return to regular work primarily because of his multiple sclerosis. Dr. Cooke, in his

letter of August 5, 1977 to the surety, also rated the claimant at 20% disability of the whole man as a result of the injury sustained in the industrial accident and opined that the claimant is totally disabled when the disorders associated with his multiple sclerosis are considered. Dr. Cooke doubted that the claimant could return to meaningful employment. Dr. Lynch, in his letter of October 17, 1977 to the surety, rated the claimant at 15% disability of the whole man. Dr. Lynch also made the following comment:

> "I note that Dr. Cooke has given Mr. Sines a twenty percent disability rating based on his back injury. Certainly it is difficult to work out how much of his disability is due to his demyelinating process [destruction or removal of the myelin sheath of nerves] and how much is due to his back injury."

Based upon these evaluations, the claimant and the employer's surety in the compensation agreement settled upon the percentage figure of 17 ½% disability of the whole man as the basis for computation of the award in the agreement, with payment subsequently being approved by the Commission by way of its order of January 6, 1978.

In his application for hearing and for modification, the claimant joined the Special Indemnity Fund of the State of Idaho (I.S.I.F.), asserting, *inter alia*:

> "This application for hearing is brought for the purpose of modifying a certain compensation agreement signed by the claimant on December 27, 1977, and thereafter approved by the Commission. Based upon a change in condition in that the claimant is now and has been ever since the time of the accident a total permanent disability.
>
> That this application for hearing joins the Industrial Special Indemnity Fund for the reason that a part of claimant's disability is related to the accident and a part is related to multiple sclerosis. The two causes have combined to render the claimant a total permanent disability. That the claimant is entitled to compensation from and after November 29, 1976,

based upon the contention that claimant has never been able to return to work and never was properly rated for disability and on December 27, 1977, was entitled to a permanent total disability, part of which should be assessed against the employer and Industrial Indemnity Company and part against the Industrial Special Indemnity Fund of the State of Idaho."

The employer and his surety answered the claimant's application for hearing, denying that he was permanently disabled to the extent claimed, but admitting disability of 17 ½% of the whole man, and also alleging that the claimant, the employer and surety had entered into a compensatio. agreement on December 27, 1977, which was approved; and further, that claimant had preexisting impairments and disabilities for which the employer and surety are not liable. It is to be noted in this regard that the employer did not execute the compensation agreement.

Industrial Special Indemnity Fund also filed its separate answer to the claimant's application for hearing, denying the claimant was totally disabled, denying any preexisting permanent physical impairment as defined by law, and also denying financial liability to any party.

A hearing was held by the Commission on April 23, 1979, at which time the Commission entered as exhibits Commission exhibit no. 1, the file of I.C. Claim No. 131308 (claimant's file before the Commission reflecting the compensation agreement and its approval, together with correspondence and various physicians' reports all relating to the claimant's injury of September 23, 1975); Commission exhibit no. 2 (the deposition of Dr. Lynch taken at the request of Industrial Indemnity Company, on February 19, 1979, prior to the hearing); and defendant's exhibit no. 3 (answers by claimant to defendant's interrogatories). In addition to the exhibits, the Commission also heard the testimony of claimant and Dr. Walter D. Thurston, claimant's attending physician.

The Commission entered its findings of fact and conclusions of law, and its order

denying claimant's application for modification of the compensation agreement. Following this order claimant perfected this appeal.

The primary issue presented by appellant is that the Commission erred in refusing to grant a modification of the previous award as sought in his application for a hearing. Correlative to this basic issue is the question of whether the Commission erred in construing the provisions of I.C. § 72–719 [1] in entering its conclusions of law.

■ It is well recognized that a compensation agreement approved by the Industrial Commission is equivalent to an award under the Idaho Workmen's Compensation Laws. I.C. § 72–711. *Dep't of Finance v. Union Pac. R. Co.*, 61 Idaho 484, 104 P.2d 1110 (1940) (decided under provisions of I.C. § 72–602, as it existed in 1940, which statute was reenacted almost verbatim in 1971 and now appears as I.C. § 72–711).[2] This court has held that except as provided by I.C. § 72–719 an award under the provisions of I.C. § 72–711 becomes final and conclusive if no appeal is taken (*see also* I.C. § 72–718). *Blackburn v. Olson*, 69 Idaho 428, 207 P.2d 1160 (1949).

■ Initially, under the foregoing finality rule, a question arises as to the effect of I.C. § 72–711 on the facts presented here.

Reiterating the situation we are dealing with, the claimant and the employer's surety entered into a compensation agreement which was approved by the Industrial Commission. At that time, I.S.I.F. was not a party to the agreement. The record discloses that at the time the agreement was entered into, the Commission had before it the fact that in the opinions of the claimant's attending physician and one neurosurgeon that the claimant was totally disabled, yet the Commission on the basis of the agreement approved the award of 17 ½% of the whole man, with no consideration given as to whether or not I.S.I.F. should be made a party. Under this state of facts, only the employee and the employer and his surety could rely upon the finality of that award under I.C. § 72–711 and 72–718. Res judicata is applicable only to the parties to that proceeding and their privies. *Pocatello Industrial Park v. Steel West, Inc.*, 101 Idaho 783, 621 P.2d 399 (1980); *Idaho State Univ. v. Mitchell*, 97 Idaho 724, 552 P.2d 776 (1976). Thus, the I.S.I.F. cannot claim that approval of the compensation agreement foreclosed proceedings against it.

Prior to 1971, when I.C. § 72–719 was enacted, the only basis for a modification of an award was "on the ground of a change in condition." *See* I.C. § 72–607, as it existed prior to 1971; *see also* S.L. 1917, Ch.

---

1. I.C. § 72–719, enacted in 1971, provides in pertinent part:

   "(1) Modification of awards and agreements—Grounds—Time within which made.—(1) An application made by a party in interest filed with the commission at any time within five (5) years of the date of the accident causing the injury . . ., on the ground of a change in condition, the commission may, but not oftener than once in six (6) months, review any order, agreement or award upon any of the following grounds:

   (a) Change in the nature or extent of the employee's injury or disablement; or
   (b) Fraud.

   (2) The commission on such review may make an award ending, diminishing or increasing the compensation previously agreed upon or awarded, subject to the maximum and minimum provided in this law, and shall make its findings of fact, rulings of law and order or award, file the same in the office of the commission, and immediately send a copy thereof to the parties.

(3) The commission, on its own motion at any time within five (5) years of the date of the accident causing the injury or date of first manifestation of an occupational disease, may review a case in order to correct a manifest injustice." (*See* I.C. § 72–607 as it existed prior to 1971.)

2. I.C. § 72–711. Compensation Agreements.—If the employer and the afflicted employee reach an agreement in regard to compensation under this law, a memorandum of the agreement shall be filed with the commission, and, if approved by it, thereupon the memorandum shall for all purposes be an award by the commission and be enforceable under the provisions of section 72–735, unless modified as provided in section 72–719. An agreement shall be approved by the commission only when the terms conform to the provisions of this law. (*See* former I.C. § 72–602 as it existed prior to 1971.)

81, § 56, p. 252, and subsequent recodifications and amendments. However, the 1971 act, now in effect, provides for modification of awards and agreements on the following grounds:

"(1) .... (a) Change in the nature or extent of the employee's injury or disablement; or (b) Fraud."

and also provides that

"(3) The commission, on its own motion ... may review a case in order to correct a *manifest injustice.*" I.C. § 72–719(1)(a), (b) and (3). (Emphasis added.)

The Commission recognized in its conclusions of law that claimant applied for a modification of a compensation agreement on the grounds of change of condition (I.C. § 72–719(1)(a)) and in order to correct a manifest injustice (I.C. § 72–719(3)). As to this later ground for modification, the Commission ruled:

"Since Claimant knew at the time he signed the Compensation Agreement he had multiple sclerosis, the record does not support a modification of the Compensation Agreement to correct a manifest injustice. *Idaho Code*, Section 72–719(3) covers situations where a worker suffers a latent injury or disease not discoverable within the limitations period."

In this regard it is the conclusion of the court that the Commission erred.

■ As used in the statute, the term "manifest injustice" as a ground for reopening and review of an order must be construed broadly. In *Goodson v. L.W. Hult Produce Co.,* 97 Idaho 264, 266, 543 P.2d 167, 169 (1975), this court stated:

"This court repeatedly has recognized the policy that 'there should be accorded to the Workmen's Compensation Act a broad and liberal construction, that doubtful cases should be resolved in favor of compensation, and that the humane purposes which these acts seek to serve leave no room for narrow technical construction.' *Smith v. University of Idaho,* 67 Idaho 22, 26, 170 P.2d 404, 406 (1946)."

"Manifest" has been defined to mean: capable of being easily understood or recognized at once by the mind; not obscure; obvious. Webster's Third New International Dictionary, 1967. "Injustice" has been defined to mean: absence of justice; violation of right or of the rights of another; iniquity, unfairness; an unjust act or deed; wrong. Webster's, Third New International Dictionary, 1967.

■ Giving the term "manifest injustice" as used in I.C. § 72–719(3) a broad construction, it would appear that the Commission failed to fully consider its obligation to make specific findings and conclusions in this regard, and thus, this case must be remanded to the Commission to afford it the opportunity to again examine its position in this regard.

During argument to this court, it was specifically pointed out that at the time the Commission approved the compensation agreement, it had in its files the statement contained in a letter by Dr. Thurston, claimant's attending physician, that claimant was totally disabled. Dr. Lynch, in his deposition, also stated that in 1976, prior to the time that the compensation agreement was executed, claimant was 90% disabled. The employer and his surety, in argument to this court, also recognized that the claimant suffered from total disability, but asserted that insofar as they were concerned their only responsibility under the statute (I.C. § 72–332) was for 17 ½% as provided in the agreement which the Commission approved. The employer and surety pointed out that the findings by the Commission that claimant's multiple sclerosis condition was not aggravated in any way by the industrial accident, that his back condition has not changed since the date of the compensation agreement, and that claimant's condition would be the same whether or not he had suffered the industrial accident, were all fully sustained by the evidence. We agree with this latter point.

■ Nonetheless, the finding by the Commission that claimant's condition was not aggravated in any way by the industrial accident is not wholly determinative of the responsibility of the I.S.I.F. in this action. I.C. § 72–332(1) provides in pertinent part:

"If an employee who has a permanent physical impairment from any cause or origin, incurs a subsequent disability by an injury ... arising out of and in the course of his employment, and *by reason of the combined effects of both the preexisting impairment and the subsequent injury* ... *or* by reason of the aggravation and acceleration of the preexisting impairment suffers total and permanent disability, the employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury ..., and the injured employee shall be compensated for the remainder of his compensation benefits out of the special industrial indemnity fund." (Emphasis added.)

This statutory provision is phrased in the disjunctive, and not in the conjunctive. If either condition exists, i.e., total permanent disability occasioned by the combined effects of both the preexisting impairment and the subsequent injury, *or* if the facts disclose aggravation and acceleration of the preexisting impairment by the industrial accident, then the liability of the I.S.I.F. arises. The Commission in its findings of fact and conclusions dealt only with the issue of whether the industrial accident aggravated the claimant's preexisting condition. It is the conclusion of this court that the Commission should have also made the first determination, *i.e.*, did the claimant's total and permanent disability arise by reason of the combined effects of both the preexisting impairment (multiple sclerosis) and the subsequent injury sustained in the industrial accident. The predicate of this conclusion is that if the determination had been made, it may very well have also followed that the initial award was a manifest injustice.

Finally, it is important to note that even though denoted a request for modification, the proceedings below were not truly an action seeking modification of a previous award. No one really disputes the propriety of the initial award of 17 ½% permanent partial disability charged to the employer and surety. Rather, the case can more properly be characterized as an attempt to bring in I.S.I.F. as a party so as to secure additional compensation benefits long after the initial award against the employer and surety had been entered. In this regard, the instant case is similar to the case of *Anderson v. Potlatch Forests, Inc.*, 77 Idaho 263, 291 P.2d 859 (1955). In that case the claimant had been paid for permanent partial disability under an agreement with his employer and its surety for an injury to his right hand and arm. Nonetheless, at that time, due to a previous injury resulting in loss of use of the left hand, the claimant was totally and permanently disabled. Three years after the compensation agreement had been approved, and almost four years after the industrial accident, the claimant brought an action for additional compensation benefits from the I.S.I.F. The court reversed the Industrial Accident Board's decision denying the claimant's request for additional benefits, observing that the files before the Board disclosed that the combined effects of the industrial accident and preexisting injury had rendered the claimant totally and permanently disabled. 77 Idaho at 268–270, 291 P.2d at 862–863. Accordingly, the cause was remanded for further proceedings to determine the amount of compensation. 77 Idaho at 270, 291 P.2d at 863. In the instant case, the files before the Commission reflect some evidence that the claimant was totally and permanently disabled. However, there having been neither a determination of whether the multiple sclerosis constituted a preexisting impairment (*see Gugelman v. Pressure Treated Timber Co.*, 102 Idaho 356, 630 P.2d 148 (1981)), nor whether the combined effects of the multiple sclerosis and the industrial accident caused the claimant's total and permanent disability, we cannot say as the court in *Anderson* could say that the claimant is entitled to additional benefits from the I.S.I.F. Thus, the order of the Commission is reversed and the cause remanded for further proceedings to determine the liability of I.S.I.F., if any, in accordance with the views expressed in this opinion. Costs to appellant and to be paid by I.S.I.F.

BISTLINE, DONALDSON and SHEPARD, JJ. concur.

BAKES, Chief Justice, concurring in result:

The Court's opinion points out that "the findings by the Commission that claimant's multiple sclerosis condition was not aggravated in any way by the industrial accident, that his back condition has not changed since the date of the compensation agreement, and that claimant's condition would be the same whether or not he had suffered the industrial accident, were all fully sustained by the evidence." Therefore, I concur with the Court's ultimate decision that there are no grounds for modification of the compensation agreement between the claimant and the employer and its surety based either on change of condition or manifest injustice.

Since the Industrial Special Indemnity Fund was not a party to the original proceeding, the claimant's request for modification could not be directed toward it. The majority acknowledges this when it states, *ante* at 9, that "the proceedings below were not truly an action seeking modification of a previous award.... Rather, the case can more properly be characterized as an attempt to bring in I.S.I.F. as a party so as to secure additional compensation benefits long after the initial award against the employer and surety had been entered." Thus, procedurally, this case is nothing more than a claim filed against the I.S.I.F. As such, the claim is subject to all of the defenses which the I.S.I.F. may have.

It is not clear that the commission viewed the matter that way, and accordingly I concur in the result reached by the majority opinion.

BISTLINE, Justice, specially concurring.

Although I.C. § 72–719(3) gives the Commission the power to correct "manifest injustice," the Commission in this case ruled:

"Since Claimant knew at the time he signed the Compensation Agreement he had multiple sclerosis, the record does not support a modification of the Compensation Agreement to correct a manifest injustice. *Idaho Code*, Section 72–719(3) covers situations where a worker suffers

a latent injury or disease not discoverable within the limitations period. In this case, Claimant knew he suffered from multiple sclerosis at the time he entered into the Compensation Agreement."

Given the Commission's interpretation of I.C. § 72–719(3), it is obvious that the Commission believed that it *could not* under these circumstances modify the settlement agreement. As the Court correctly concludes, however, the Commission erred in interpreting the statute so narrowly.

Idaho is one of several states which have statutes allowing workmen's compensation awards and settlement agreements to be reopened by the Commission. Some of these statutes set forth specific circumstances in which awards may be modified, while others "give the Commission blanket power to make such changes in awards as are in its judgment justified" or "say that awards may [be] modified for any good cause." 3 Larson, Workmen's Compensation Law § 81–52 at 15–546 (1976). In view of the fact that the purpose of these statutes is to ensure that victims of industrial accidents receive adequate protection and compensation, the sounder approach is to broadly construe the power of the Commission to reopen awards. *Id.* at 15–536 to 15–546. *Cf. Goodson v. L. W. Hult Produce Co.*, 97 Idaho 264, 266, 543 P.2d 167, 169 (1975).

I.C. § 72–719(3) gives the Commission broad power to "correct manifest injustice," rather than listing any specific grounds for modification. In that regard it is similar to Minn.Stat. § 176.461 (1980), which provides in part: "[T]he workers compensation court of appeals, for cause, at any time after an award, upon application of either party ... may set the award aside ...." In *Wollschlager v. Standard Const. Co.*, 300 Minn. 550, 220 N.W.2d 346 (1974), the Minnesota Supreme Court stated that cause for setting aside an award exists in cases involving fraud, mistake, newly discovered evidence, and a substantial change in the employee's condition. This interpretation of Minn. Stat. § 176.461 was applied in the recent case of *Landon v. Donovan Const. Co.*, 270

N.W.2d 15 (Minn.1978), in which the Minnesota Supreme Court stated: "In all cases the basic concern in determining whether sufficient cause exists to set aside an award is to assure a compensation proportionate to the degree and duration of the disability." *Id.* at 16.

An approach similar to that employed by the Minnesota Supreme Court has been adopted by the California Supreme Court in interpreting its reopening statute, which allows awards to be reopened for "good cause." Cal.Labor Code § 5803 (West 1971). Grounds commonly held to constitute good cause are:

"(1) mistake of fact, occasioned by failure or inability to produce certain evidence at a prior hearing;

(2) mistake of law disclosed by subsequent appellate court ruling on the same point in another case;

(3) inadvertence, as when the Appeals Board issues a decision under the mistaken impression that its Medical Bureau had made an adverse report in the case;

(4) newly discovered evidence which is more than merely cumulative; and

(5) fraud, such as may be perpetuated through perjury and false statements."
*Nicky Blair's Restaurant v. Worker's Compensation Appeals Board*, 109 Cal.

App.3d 941, 167 Cal.Rptr. 516, 525 (1980) (quoting 1 Hanna, Law of Employee Injuries and Workmen's Compensation § 9.02[2][a], at 9–14 (2d rev. ed. (1980)).

Given the purpose of workmen's compensation acts, it is clear that the approach employed by the Minnesota and California Supreme Courts is the proper approach. The Commission has the power to reopen an award or a settlement agreement at any time within the five year period set forth in I.C. § 72–719(3), whenever circumstances exist which render the original award inequitable.[1] *Cf. Pullman Co. v. Industrial Accident Commission*, 28 Cal.2d 379, 170 P.2d 10, 15 (Cal.1946).

The Court states the settlement agreement "may very well have [been] a manifest injustice." To my mind, however, it is clear that the failure to join the I.S.I.F. in the original proceedings constitutes "manifest injustice" as a matter of law.[2] In this case, Mr. Sines was given a 15% disability rating by Dr. Lynch and a 20% disability rating by Dr. Thurston for the injury to his back resulting from the industrial accident. The Compensation Agreement approved by the Commission was prepared on the basis of 17½% of a total disability, an obvious compromise. However, I agree with the

---

1. Although the approach used in Minnesota and California is sound, cases from those jurisdictions which list certain circumstances in which awards can be reopened should not be taken as limiting in any way the power of the Commission to reopen awards when, in its judgment, an award is manifestly unjust.

2. As in the *Landon* case, there is a serious question as to ineffective assistance of counsel. The uncontradicted testimony of Mr. Sines was as follows:

"Q. Mr. Sines, when you signed the agreement which is Page 1 of Exhibit 1, were you represented by a lawyer?
A. Carl Buell. He was in the hospital then, had cancer of the liver. He died right after that. Well, I knew he was dying then.
Q. Did you refer to the agreement, did you read it before you signed it?
A. I couldn't read it.
Q. Did someone explain it to you?
A. I asked him about it, what I was signing, and he was just about as blind as I am. He had cataracts bad on his eyes.
Q. Did he explain it to you, though?

A. He just told me not to worry about it, that it wasn't—I wasn't signing anything away when I signed it."
A competent attorney with reasonable experience in handling workmen's compensation cases would have pursued the issue of liability on the part of the I.S.I.F. from the outset. The issue of claimant's total disability and I.S.I.F. involvement, however, was not presented to the Commission until the hearing on Mr. Sines' application for modification of the Compensation Agreement. At that point, the Commission's consideration of the issue was foreclosed by its own improperly limited interpretation of I.C. § 72–719(3). However, the Commission itself is bound to take judicial notice of its own files pertaining to a case. *Anderson v. Potlatch Forests, Inc.*, 77 Idaho 263, 268, 291 P.2d 859, 862 (1955). Given the facts of this case and the record before the Commission, at the time it approved the Compensation Agreement the Commission had the responsibility to raise the issue of claimant's total disability, regardless of whether that issue was raised by his attorney.

Court that the claimant's impairment due to the back injury was properly determined, and it is therefore res judicata that the permanent physical impairment resulting from claimant's back injury is 17½%. However, that certainly was not the only issue which should have been considered in this case. The law in Idaho is clear that in evaluating permanent *disability*, all the claimant's physical impairments, not just that which ensues from the recent industrial injury, must be considered. I.C. § 72–332; *Lyons v. Industrial Special Indemn. Fund*, 98 Idaho 403, 406, 565 P.2d 1360, 1363 (1977). The Commission did not do so in this case.

As a Finding of Fact, the Commission stated: "[Sines] was not hired on one occasion because he disclosed to the potential employer that he had multiple sclerosis." Thus, although prior to the industrial accident Mr. Sines was able to carry out all the duties of a lumberjack, as a matter of law, his multiple sclerosis constituted a permanent physical impairment. *See Gugelman v. Pressure Treated Timber Co.*, 102 Idaho 356, 630 P.2d 148 (1981). The Commission, however, did not take into account Mr. Sines' pre-existing physical impairment in approving the compensation agreement. If it had, the Commission certainly would have concluded that Mr. Sines was totally and permanently disabled as a result of the industrial accident.

Although the Court states that "[i]n the instant case, the files before the Commission reflect *some evidence* that the claimant was totally and permanently disabled," (emphasis added), the evidence clearly established that Mr. Sines was in fact totally and permanently disabled. It was undisputed that following his industrial accident Mr. Sines was never able to return to work. Furthermore, my review of the record indicates that there was essentially no dispute in the proceedings before the Commission that at the time the settlement agreement

was entered into, Mr. Sines was totally and permanently disabled. As the Court notes, neither the employer or its surety disputed this fact. Their only contention was that their only responsibility under I.C. § 72–332 was for the 17½% physical impairment that the doctors testified was attributable to the accident. The Court also notes that Dr. Thurston, the physician who had treated Mr. Sines for several years, was of the opinion that as of December 13, 1977 (before the settlement agreement was entered into), Mr. Sines was totally disabled. The testimony of Dr. Lynch supports this conclusion:

"Q. Doctor, when you're speaking of the 15 percent impairment, are you speaking of an impairment as a result of the accident? Is that what you're speaking of?

A. That's all I'm relating that to, yes.

Q. Now, Mr. Sines has much more bodily impairment, I take it, than bodily impairment resulting from the accident; does he not?

A. ·Correct.

Q. What would you consider his *bodily impairment* taking into consideration the 15 percent which you rate as a direct result of the accident and the multiple sclerosis combined?

A. Ninety percent altogether.

Q. *Do you believe that he is able to do any work at this time?*

A. *I don't believe he could, no.*

Q. For how long a time do you think that has existed?

A. He appears to be unchanged from my examination of 1976, on January 12, so it's existed for three years now. *And I would expect this to go on indefinitely.*" (Emphasis added.) [3]

The only real question in this case is whether Mr. Sines' total disability was caused by the industrial accident. The fact that the industrial accident resulted in only

---

3. The Court acknowledges the testimony of Dr. Lynch, stating that Dr. Lynch testified that "Claimant was 90% disabled." The Court, however, appears to confuse disability with impairment. Dr. Lynch testified that Mr. Sines had a total bodily *impairment* rating of 90% when the 15% impairment resulting from the industrial accident was combined with Mr. Sines' multiple sclerosis.

a 17½% *impairment* in no way precludes a finding that the total *disability* resulted from the accident. The substantial evidence in the record is that the combined effects of the multiple sclerosis and the industrial accident did in fact cause claimant's total and permanent disability. Up until the time of the accident, the claimant was able to work. However, following the accident, Mr. Sines was never able to return to work. The fact that Mr. Sines' multiple sclerosis would have eventually resulted in total disability regardless of the accident is naught but a mere happenstance and cannot be said to negate his right to receive compensation for his total permanent disability under the actual facts and circumstances as they did occur.

Since the I.S.I.F. is liable for that portion of the claimant's total permanent disability not attributable to the industrial accident, *i.e.*, that portion attributable to his pre-existing physical impairment, the failure to join the I.S.I.F. resulted in a settlement agreement which was manifestly unjust. Thus, like the agreement in the *Landon* case, *supra*, the agreement in this case appearing on its face to be unfair, I would prefer that the Court speed up the process by directing the entry of a modified award which includes the liability of the I.S.I.F. However, I feel certain that the claimant will look with favor upon the Court's opinion, which in my view is another in a series of enlightened opinions in what is a somewhat unexplored area of Idaho's Workmen's Compensation law. A very worrisome aspect of I.C. § 72–719 is that provision which seems to say that a proceeding "to correct a manifest injustice" will be made by the Commission *on its own motion*. I understand by our holding today that we are making it known that claimants, and in some instances, employers and their sureties, are not precluded from making the same motion, and thereby triggering what I perceive to be a very broad equitable power conferred by the legislature upon the Commission. This is as it should be. It must be remembered that at one stage in the field of Workmen's Compensation law, appeals did not proceed directly from the Commission into the Supreme Court; claimants were first entitled to take an appeal "to the district court of the county in which the injury occurred" and the case was thereafter tried by the court in a review limited to questions of law. Idaho Code Annotated §§ 43–1408–1409 (1932). The district court was specifically authorized to have regard for "any irregularity or error" which was to the damage of a party. I would assume that the district court could also have used its inherent equitable powers to avoid or correct a manifest injustice had the occasion arisen necessitating that it do so.

Similarly, I assume today, with equal confidence, that the 1971 legislature had in mind that the Commission, which is now the only tribunal to which a claimant has access other than this Court, should have the same broad equitable powers of a district court in order to fulfill its function of providing sure and certain relief for the injured working man or woman. Hence, it is important that the Commission realize the extent of its power, a power which, by its makeup, it can most competently and effectively administer.[4] I surmise that until the handing down of today's opinion, the Commission may have had some doubts.

---

4. As I recently mentioned in *Heese v. A. & T. Trucking*, 102 Idaho 598, 635 P.2d 962 (1981), one member of the Commission is learned in the law, possessing all of the qualifications required of judges and justices, and the other two members are possessed of a vast accumulation of knowledge and experience in Workmen's Compensation law, amounting to a sense of intuitive fairness—which is but another way of declaring their ability to award equitable relief where a manifest injustice has occurred.