**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 37081**

| | | |
|---|---|---|
| UNTE CHEH, | ) | |
| | ) | |
|     Claimant-Appellant, | ) | |
| | ) | **Coeur d'Alene, November 2010** |
| v. | ) | |
| | ) | **2010 Opinion No. 123** |
| EG&G IDAHO, INC., dba IDAHO | ) | |
| NATIONAL ENGINEERING | ) | **Filed: November 26, 2010** |
| LABORATORY, Employer, and WAUSAU | ) | |
| UNDERWRITERS INSURANCE | ) | **Stephen W. Kenyon, Clerk** |
| COMPANY, Surety, | ) | |
| | ) | |
|     Defendant-Respondents. | ) | |

Appeal from the Industrial Commission.

Industrial Commission denial of Motion to Reconsider, <u>affirmed.</u>

Starr Kelso Law Office, Chtd., Coeur d'Alene, for appellant. Starr Kelso argued.

Law Office of Harmon & Day, Boise, for respondent. E. Scott Harmon argued.

_____

BURDICK, Justice

    Unte Cheh (Cheh) appeals from the Idaho Industrial Commission's ("the Commission") denial of his Motion for Reconsideration of his Motion to Stay Briefing Schedule, Reopen the Hearing, and Permit Discovery. The Commission previously found that Cheh failed to provide notice within the statutory time limit and that all other issues were rendered moot. The Commission denied Cheh's Motion for Reconsideration finding that he had failed to demonstrate a manifest injustice. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

    Cheh was employed by EG&G Idaho, Inc. ("EG&G") dba Idaho National Engineering Laboratory ("INEL") between November 1, 1976 and January 6, 1978. Cheh began

experiencing symptoms characteristic of his claimed illness no later than December 1977. After leaving the INEL, Cheh continued to work in the nuclear power industry for the next 21 years.

In 1998 Cheh filed a federal workers' compensation action alleging that his many physical ailments resulted from exposure to radiation in the course of his employment with the Nuclear Regulatory Commission ("the NRC"). This claim was denied. Cheh retired from the NRC in January 2000 due to his medical problems.

On April 25, 2002, Dr. Sternglass, PhD, told Cheh that his symptoms were consistent with radiation exposure and suggested that Cheh see a specialist. On December 22, 2004, Dr. Alberto Martinez, MD, wrote a letter, *inter alia*, diagnosing Cheh with cataracts and noting that cataracts may result as a side effect of radiation exposure.

Cheh filed another federal workers' compensation action on March 31, 2005, alleging that he had contracted an occupational disease as a result of being exposed to radiation during the course of his employment at the NRC. On August 18, 2006, the U.S. Department of Labor ("the DoL") sent Cheh a letter with an attached decision denying his claim. That decision noted that Cheh's Notice of Occupational Disease had complained of a mysterious illness, beginning in 1986, with "symptoms of colorectal pain/bleeding, frequent urination, vomiting, reduced immune system, developing diabetes, dry mouth, loss of teeth, ptosis/cataract, memory lapse, depression and EKG abnormality/shortness of breath/chest pain." The DoL decision noted that a May 7, 2003, disability slip filled out by Dr. Ronald Kurstin, MD, indicated that Cheh was a radiation victim suffering from intestinal pain and rectal bleeding. The DoL decision includes quotations from a medical report written by Dr. Ernest Chiodo, MD, wherein Dr. Chiodo stated, "In my opinion you [Cheh] have suffered from adverse medical and psychiatric consequences due to your employment at United States Nuclear regulatory commission."

The DoL denied Cheh's claim for workers compensation, finding that the evidence in the record did not support his contentions. The DoL noted that Cheh had written a letter to Dr. Shuster, MD, of Johns Hopkins Hospital, in 1993, in which he stated that his bowel problems began immediately after an automobile accident in 1991.

In a letter dated February 17, 2006, Dr. Daniel Lahr, MD, wrote that "Mr. Cheh had removal of a right ankle lesion on 02/09/06 at Shady Grove Hospital. Given his history of full-body radiation exposure I believe that it is reasonable to assume that this lesion is secondary to that exposure."

2

On January 3, 2007, Cheh received a mass mailing from the USW Worker Health Protection Program, offering free medical screening to all past employees of INEL, and advising those employees about federal workers compensation that is available to workers who are injured as a result of radiation or toxic exposure. Cheh received a second medical opinion letter from Dr. Chiodo on January 22, 2007, stating, *inter alia,* "In my opinion you have suffered from adverse medical and psychiatric consequences due to your employment at United States Nuclear Regulatory Commission as well as at the Idaho National Engineering Laboratory (INEL)."

On May 11, 2008, Cheh filed a *pro se* claim against INEL, alleging that he incurred an occupational disease as a result of high dose radiation exposure at his job. INEL and its Surety denied Cheh's claim, finding that he had failed to make timely notice of his occupational disease under I.C. § 72-448.

On January 15, 2009, the Idaho Industrial Commission (Commission) met to determine the bifurcated issues of whether: (1) Cheh had met statutory notice and filing requirements under I.C. § 72-448; and (2) the result of Cheh's claims was dictated through *res judicata*, collateral estoppel or a similar principle.[1] Cheh represented himself at the January 15, 2009, hearing.

On April 14, 2009, attorney Starr Kelso appeared on Cheh's behalf to file a Motion[2] seeking a stay of briefing and reopening of the hearing to allow further discovery. On April 21, 2009, Cheh filed a *pro se* motion requesting an extension of briefing deadlines. On April 23, 2009, EG&G filed an objection to Cheh's April 14, 2009, Motion to Reopen. On April 23, 2009, Referee Donahue entered an order denying Cheh's April 14, 2009, motion and granting Cheh's April 21, 2009, motion in part, providing Cheh with an extra week to prepare his brief. This Order also instructed Cheh to clarify whether he was being represented by attorney Kelso, given that Cheh filed a *pro se* motion after Kelso had appeared as his attorney. On April 27, 2009, Kelso submitted an attorney status report, instructing the Commission that he had appeared on Cheh's behalf for the limited purpose of filing the April 14, 2009, Motion to Reopen, and since that motion had been denied he was no longer representing Cheh.

---

[1] It was assumed, for purposes of the bifurcated hearing, that causation was not at issue and that Cheh had contracted an occupational disease as a result of his employment with INEL.
[2] "MOTION TO STAY BREIFING [sic] SCHEDULE; REOPEN THE HEARING; AND PERMIT DISCOVERY TO THE EXTENT NECESSARY PURSUANT TO J.R.P.P. RULE 3(E), I.C. §72-719(C); I.C. §72-708; AND GENERAL EQUITABLE POWERS OF THE INDUSTRIAL COMMISSION TO CORRECT MANIFEST INJUSTICE" ("Motion to Reopen").

After reviewing the Referee's recommendation, the Commission prepared modified findings and conclusions, finding that Cheh's symptoms had likely manifested before 1998, and had certainly manifested by February of 2006. The Commission concluded that, under either the current or pre-1997 versions of I.C. § 72-448, Cheh's claim was time barred. The Commission also determined that the result of Cheh's claims was not dictated by application of *res judicata*, collateral estoppel or a similar principle.

Cheh filed a Motion for Reconsideration on August 4, 2009, and an additional motion seeking a copy of Referee Donohue's recommendations. On October 1, 2009, the Commission entered its Order Denying Reconsideration and Granting the Motion for a Copy of the Referee's Recommendation ("Order Denying Reconsideration").

On October 27, 2009, Cheh (again represented by attorney Kelso) filed his Notice of Appeal with this Court.

## II. STANDARD OF REVIEW

This Court employs a three-part test to determine whether the Commission abused its discretion, reviewing: "(1) whether the Commission correctly perceived the issue as one of discretion; (2) whether it acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether it reached its decision by an exercise of reason." *Super Grade, Inc. v. Idaho Dep't of Commerce and Labor*, 144 Idaho 386, 390, 162 P.3d 765, 769 (2007).

## III. ANALYSIS

Cheh acknowledges that the Commission perceived its rulings on his Motion to Reopen and Motion for Reconsideration as issues of discretion, but argues that those decisions were not reached through an exercise of reason and exceeded the outer bounds of the Commission's discretion.

In Cheh's Motion to Reopen he argued that the Commission should stay briefing and reopen hearing and discovery in the case, in order to correct a "manifest injustice" in accordance with I.C. § 72-719(3).[3] In *Sines v. Appel*, this Court stated that:

> [a]s used in the statute, the term "manifest injustice" as a ground for reopening and review of an order must be construed broadly. . . . "Manifest" has

[3] Idaho Code 72-719 is titled "Modification of awards and agreements --Grounds--Time within which made", and subsection (3) states "[t]he commission, on its own motion at any time within five (5) years of the date of the accident causing the injury or date of first manifestation of an occupational disease, may review a case in order to correct a manifest injustice."

4

been defined to mean: capable of being easily understood or recognized at once by the mind; not obscure; obvious. "Injustice" has been defined to mean: absence of justice; violation of right or of the rights of another; iniquity, unfairness; an unjust act or deed; wrong.

103 Idaho 9, 13, 644 P.2d 331, 335 (1982) (internal citations omitted). In addition to I.C. § 72-719(3), Cheh cited to the general equity principles mentioned in I.C. § 72-208 and the Commission's broad equitable powers. Cheh argued that the record before the Commission was likely to lead to an erroneous finding that he had failed to file his claim within the statutory time limit of I.C. § 72-448.

Cheh's Motion to Reopen was accompanied by two affidavits, one filed by Cheh himself, and another filed by Kelso. In Cheh's Affidavit he explained that he occasionally begins answering questions by saying "Yes" to indicate that he has understood the question asked, even when he is not answering the question in the affirmative. Cheh expressed concern that his difficulty in communicating during his telephonic hearing before the Referee may have caused the Commission to have an erroneous understanding of the facts of the case.[4] Kelso stated, based upon his review of the case history and discussion with Cheh, that "it is my opinion that the actual factual history, that can be brought out with further testimony and evidence, reflects that Claimant provided timely notice" under I.C. § 72-448.

---

[4] Cheh points to two specific sections of the prehearing transcript where he believes that his testimony may have been misinterpreted. The following is an excerpt of the transcript covering those two sections. Cheh argues that he replied "yes" to indicate that he understood a question, though he was not answering in the affirmative. He believes that the Commission may have misinterpreted him in this exchange. The two "yes" responses at issue have been emphasized with bold. In the following exchange, Mr. Harris is an individual who is at the same geographic location as Cheh and is attempting to clarify Cheh's testimony for the other listeners, not offering testimony himself.

> MR. WHITTIER: And in 1977 did the psychiatrist relate your condition to your work at INL?
> THE WITNESS: Could you repeat that question again? I can hardly hear you.
> REFEREE DONOHUE: Let me -- I can help make it a little louder, I think. The question was: Did the psychiatrist in 1977 relate your depression or your condition to work at INL or INEL?
> THE WITNESS: **Yes**. He see that ask general questions to me, my health conditions, family condition, and my work condition, how I come up, he told INL and that was that and, then, I left.
> MR. HARRIS: Did she give you reasons for your depression?
> THE WITNESS: No.
> MR. HARRIS: Okay. He did not give reasons for his depression.
> MR. WHITTIER: Did she relate it to his work?
> MR. HARRIS: She did not relate to him the nature of his depression.
> REFEREE DONOHUE: Mr. Harris, I understand that you're well familiar with this. We need to hear Mr. Cheh say it first and, then, just tell what he said. Go ahead, Mr. Cheh.
> THE WITNESS: Yes.
> REFERRE DONOHUE: Did the psychiatrist in 1977 relate your depression to your work?
> CHEH: **Yes**. My boss said to me -- told her. My boss said that you are sick. You need to see a psychiatrist. I presume it's because of two months ago I called the police, 911, and the police have report you to -- that to my INL management.

5

The Referee's Order on Claimant's Motions and Another Amended Order on Briefing Schedule states, in relevant part:

> Enough is enough. The Commission has afforded Claimant generous opportunity to present his case. Manifest injustice to Claimant has not been shown. While many *pro se* Claimants are allowed some leniency in Commission proceedings, Claimant was afforded due process and equitable courtesy above and beyond that allowed to most *pro se* Claimants before the Commission. He has certainly been afforded all the process due him. He delayed obtaining an attorney until after the hearing. Having tried, for whatever reasons, to prosecute his case on his own, it would create manifest injustice to Defendants to allow Claimant to undo everyone's work on this matter and to start afresh as if nothing had gone before.
>
> The hearing on the merits of the bifurcated issues has been held. The belated discovery Claimant seeks is not allowed by statutes or Commission rules.

This order expressed the Referee's frustration with Cheh and found that it would be unfair to EG&G to reopen proceedings, but did not actually address the proffered basis underlying the Motion to Reopen.

In his Motion for Reconsideration, Cheh argued that the affidavits filed by Kelso and Cheh demonstrated that reopening to allow for further evidence would demonstrate that: (1) Cheh did not know he suffered high dose radiation prior to receipt of the USW Worker Health Protection Program letter on January 3, 2007; and (2) Cheh was not aware that his high dose radiation exposure at INEL was the cause of his disease until he received Dr. Chiodo's letter on January 22, 2007. Therefore, Cheh argued, the cause of his illness was not manifest until at least January 3, 2007, and his claim should not be time barred by I.C. §72-448.

In its Order Denying Reconsideration, the Commission found as follows:

> The Order on Claimant's Motions and Another Amended Order on Briefing Schedule was filed on April 23, 2009. The order noted that Claimant had repeatedly filed inappropriate discovery and motions. Claimant was encouraged to retain counsel on several occasions. The Referee found that Claimant did not show a manifest injustice and that Claimant had been afforded due process and equitable courtesy above and beyond that allowed to most *pro se* claimants. Claimant could have retained counsel before the hearing but chose to proceed on his own. Claimant did work with an attorney from June 2007 until March 21, 2008 when that attorney informed Claimant that he was withdrawing as counsel. Yet, this still left Claimant with ample time to retain counsel prior to the January 15, 2009 hearing. Finally the order granted Claimant an additional week within which to file his brief.
>
> The issues of this case were bifurcated to narrow the scope for discovery and focus on the heart of the matter. The hearing proceeded and then several months later Claimant, through Mr. Kelso, filed a motion to reopen and

6

essentially start over. Claimant had sufficient time to prepare or find assistance in preparing for the hearing as he saw fit. The Commission agrees that Claimant was afforded due process and there was no manifest injustice. Finding no error in the Referee's order, the Commission affirms the same.

Although Claimant disagrees with the Commission's findings and conclusions, the Commission reviewed and weighed, as a whole, the medical reports and evidence presented. The Commission's decision of July 30, 2009, in the above referenced case, is supported by substantial evidence in the record and Claimant has presented no persuasive argument to disturb that decision.

The Commission mirrored the Referee's order in finding that Cheh had been provided due process, and had not shown a manifest injustice. The Commission's Order Denying Reconsideration does not address the specific argument that Cheh advanced in his Motion to Reopen or accompanying affidavits. Cheh's Motion to Reopen and the accompany affidavits of Cheh and Kelso broadly argue that Cheh had not received notice that his medical condition was related to his exposure at INEL until January 22, 2007. The only specific argument Cheh offers in support of his Motion to Reopen is his concern that the Commission may have misunderstood Cheh's testimony as to whether a psychiatrist had told Cheh, in 1977, that his medical condition was related to his job at INEL. *See* footnote 4 *supra*.

Cheh cites *Sines v. Appel*, 103 Idaho 9, 644 P.2d 331 (1982), in support of his argument that "[t]here are literally no required findings to support the Commission's conclusion." In *Sines*, the Appellant, Sines, had been injured during the performance of his job as a timber faller. 103 Idaho at 10, 644 P.2d at 332. Sines suffered from the pre-existing condition of multiple sclerosis, making it difficult for reviewing physicians to determine what portion of his subsequent disability was due to his occupational injury and what portion was due to his pre-existing condition. *Id*. Sines and his employer entered into a compensation agreement, agreeing that his occupational industry had resulted in 17.5% total disability. *Id*. at 11, 644 P.2d at 333. Approximately 10 months after the Commission approved the compensation agreement, Sines applied for a modification of the award.[5] *Id*. at 10, 644 P.2d at 332.

Idaho Code § 72-332(1) provides that where an employee had a permanent physical impairment and incurs a subsequent disability during his employment that either (1) combines

---

[5] The Court in *Sines* noted that even though Sines's request had been captioned as a request for modification he was not truly seeking to modify the 17.5% disability agreement, rather "the case can more properly be characterized as an attempt to bring in [Industrial Special Indemnity Fund] as a party so as to secure additional compensation benefits long after the initial award against the employer and surety had been entered." *Sines v. Appel*, 103 Idaho 9, 14, 644 P.2d 331, 336 (1982).

7

with the preexisting permanent physical impairment, or (2) aggravates and accelerates the preexisting permanent physical impairment, so as to render the employee totally permanently disabled, that employee is entitled to compensation from the Industrial Special Indemnity Fund. *Id*. at 14, 644 P.2d at 336. Sines argued that his award should be modified under I.C. § 72-719(3), in accordance with I.C. § 72-332(1). The Commission denied relief, stating simply that "'[s]ince Claimant knew at the time he signed the Compensation Agreement he had multiple sclerosis, the record does not support a modification of the Compensation Agreement to correct a manifest injustice.'" *Id*. at 13, 644 P.2d at 335. This Court found that the Commission had erred as it appeared to consider only whether Sines's industrial accident aggravated his preexisting condition and not whether the combined effects of the preexisting condition and the industrial accident rendered Sines totally and permanently disabled. *Id*. at 14, 644 P.2d at 336.

It is clear that this Court's holding in *Sines* was based on the Court's finding that the record demonstrated that the Commission had failed to correctly apply the relevant law, in failing to fully consider I.C. § 72-332(1). Nothing in the record before this Court suggests a situation analogous to that presented in *Sines*, there has been no contention or evidence that the Commission misinterpreted the law.

Cheh also argues that the Commission acted unjustly, and abused its discretion in denying his Motion to Reopen and Motion for Reconsideration, citing to *Ball v. DAW Forest Prods., Co.*, 136 Idaho 155, 30 P.3d 933 (2001). The relevant question in *Ball* was whether the Referee should have granted the appellant's request for a continuance where the appellant suffered a grand mal seizure during the hearings before the Referee. *Id*. at 161, 30 P.3d at 938. The Referee denied the continuance, and the appellant raised the issue on appeal. *Id*. This Court noted that "the denial of a request for a continuance under the circumstances of this case is questionable", but went on to find that the issue had not been appealed to the Commission and was therefore not preserved for appeal. *Id*.

The facts before this Court are entirely dissimilar to those presented in *Ball*. Where the appellant in Ball suffered a medical emergency during his hearing before the Referee and was unable to participate, Cheh was given a full and complete opportunity to present his case before the Referee.

The Commission held that Cheh's claim was time barred because his occupational disease had become manifest no later than February 2006, when Claimant received Dr. Lehr's

report.  The Commission's findings contain numerous references to the variety of medical records and other documents that the Commission reviewed in reaching its determination. Nowhere in its findings does the Commission conclude that Cheh had been told by his psychiatrist that the conditions he exhibited in 1977 were related to his work.  Thus, whether or not the Commission believed that Cheh had testified that his psychiatrist told him in 1977 that his condition was related to his work at INEL, the Commission did not rely upon that finding in reaching its decision.  In this case the alleged inaccuracy in the record was not material, as the Commission did not rely upon it in reaching its determination, thus it cannot be said that a manifest injustice resulted where the Commission denied Cheh's Motion to Reopen.

It was clearly within the outer bounds of discretion for the Commission to deny Cheh's request that it stay proceedings, reopen the hearing and permit discovery, where the Motion to Reopen and accompanying affidavits did not allege anything that would have changed the applicable facts.  Likewise it was clearly an exercise of reason.

## IV. CONCLUSION

We affirm the Commission's denial of Cheh's Motion to Reopen.  Costs to the Respondents.

Chief Justice EISMANN and Justices J. JONES, W. JONES and HORTON, **CONCUR.**