(No. 6686. September 21, 1940.)

JAMES ZAPANTIS, Appellant, v. CENTRAL IDAHO MINING & MILLING COMPANY and STATE INSURANCE FUND, Respondents.

[106 Pac. (2d) 113.]

E. B. Smith, for Appellant.

Clarence L. Hillman, for Respondent and Cross-appellant, State Insurance Fund.

AILSHIE, C. J.—The claimant James Zapantis, a Greek laborer, had been employed by the Central Idaho Mining & Milling Company, which we will hereinafter designate as the Company, since April, 1934. His work consisted of loading cars in a mining tunnel. June 20, 1934, while claimant was at his duties as employee, in fixing a platform in the underground tunnel, some rock dropped from the roof of the tunnel onto claimant, knocking him down and seriously injuring him, particularly in his back, lower limbs and kidneys. He was taken to the hospital and a physician was called and he was properly treated, and the case was reported to the Industrial Accident Board. What followed on and after April 17, 1935 (date of compensation agreement), is quite fully covered by the findings of the board, up to the date (Sept. 16, 1937) of filing the petition in the present case:

"VI.

"That on the 17th day of April, 1935, the claimant, James Zapantis, and the Central Idaho Mining & Milling Company, employer, and State Insurance Fund, surety, entered into an agreement regarding compensation due the claimant by reason of the injuries received by him as above stated, on the 20th day of June, 1934; that in said agreement it was agreed by and between the parties that as a result of the above mentioned injuries, he was totally disabled for work from the 21st day of June, 1934, to the 28th day of January, 1935, and had a permanent partial disability consisting of loss of function in the back equal to 10% as compared to amputation of one leg at the hip and the said defendants agree to pay to the claimant as compensation for the said total temporary disability and the permanent partial disability the sum of $652.64.

"VII.

"That the said defendants have paid to the claimant, James Zapantis, the whole sum of said $652.64, and have paid for all the hospitalization had by claimant by reason of his injury sustained by him as above stated and for all of the necessary medical attendance had by him on account of said injuries until said agreement was entered into on April 17, 1935; that such payment of compensation covered the period from June 20, 1934, until June 4, 1935.

"VIII.

"That on or about December 30, 1935, claimant filed with the Industrial Accident Board his application to reopen the case and for modification of the agreement or award theretofore made in his favor, upon the ground that he had suffered a change in condition since said agreement was entered into and approved by the Board; that a hearing was had upon said application for modification and as a result thereof the Industrial Accident Board on January 30, 1936, made and filed herein its Findings of Fact, Rulings of Law and Order to the effect that no change had then occurred in claimant's condition as a result of his accident and denying claimant's application for modification."

Commencing with the date of filing the *present petition* for modification of the award, and thence down to the award made thereon, the facts and circumstances are quite fully covered by Findings IX and X as follows:

"IX.

"That on the 16th day of September, 1937, the claimant filed with the Board another petition for modification alleging therein, 'that since claimant's application for a review of modification of agreement and award heard on February 1, 1936, there has been a change of claimant's condition, in that the injuries which claimant sustained on said June 20, 1934, and results thereof have progressed for the worse in that claimant has suffered and he is now suffering from psychoneurosis of traumatic origin, also progressive hypochondriasis of traumatic origin; that such ailments are referred to in his said application about pains in claimant's chest and head with sharp shooting pains in his lower lumbar region; that at times he suffers dizziness and upon exertion in attempting to lift any sizable weight, he suffers from marked lumbar pains which extend up his entire back to his head, accompanied by dizziness and weakness which may continue for a period of four or five days; that he suffers from marked emotional instability with a pathological anxiety about his physical health and well being, and at times suffers from akoasms'; that upon the said last mentioned petition for modification, a hearing was held before the Board on January 10, 1939, as above stated.

"X.

"It is expressly found that on the said 17th day of April, 1935, that at the time the above mentioned agreement was entered into that claimant, as a result of his said injury had a tenderness over the left lower dorsal and upper lumbar area extending across to the left side; that the symptoms of disability then manifest were objective and real and together with the loss of function of, and pains in, the back were a permanent injury actually equal to and comparable with the loss of the leg by amputation at the hip joint, instead of a disability equal to only 10% of the loss of the leg by amputation at the hip, and that the said claimant did, on said 17th day of April, 1935, and at the time he entered into the above mentioned agreement, have, and he now has a permanent injury consisting of a tenderness over the left lower dorsal and upper lumbar area extending around the left side, a loss of function of, and pains in, the back, and that said injury then was, and now is, equal to and comparable with the loss of leg by amputation at the hip joint; that the terms of the agreement of April 17, 1935, above referred to, did not conform to the provisions of the Workmen's Compensation Law and the approval thereof by the Industrial Accident Board was erroneous and should be withdrawn, cancelled, annulled and held for naught, and that said agreement should be set aside."

The board next found (Finding XI) "That there has been no change in claimant's condition due to the injuries sustained by him on or about June 20, 1934, or the result thereof, . . . . and that the injuries which claimant suffered in said accident have not progressed for the worse."

We are now confronted with the following outstanding facts:

(1) June 20, 1934, claimant was injured in an accident arising out of and in the course of his employment;

(2) That thereafter and on April 17, 1935, upon agreement entered into by the claimant, the company and the state insurance fund, an award was made, approved and entered by the Industrial Accident Board;

(3) Thereafter December 30, 1935, claimant through his attorney made application to the board to reopen the case

and modify the award entered April 17, 1935, which application was amended January 25, 1936, on the ground of a "changed condition"; and that the estimate as to the percentage of permanent partial disability on agreement was totally inadequate;

(4) January 30, 1936, the board made and entered its order *denying the application* on the ground "That if there has been any change in the physical condition of the claimant since the 17th day of April, 1935, it has been for the better."

(5) September 16, 1937, claimant through his attorney filed an application praying for "modification of the compensation agreement heretofore entered into in the above entitled cause and the summary and award in his favor heretofore approved by the Industrial Accident Board"; and based the same upon the grounds "That since claimant's application for a review and modification of the agreement and award, heard on January 21, 1936, . . . . there has been a change in claimant's condition, in that the injuries which claimant sustained on or about June 20, 1934, . . . . have progressed for the worse," etc.;

(6) February 7, 1939, the board made findings of fact and rulings of law from which quotations are made hereinabove; and thereupon entered an award as follows:

"WHEREFORE, IT IS ORDERED, AND THIS DOES ORDER, That the approval of the Industrial Accident Board to the agreement made and entered into between the claimant, James Zapantis, and the defendants, Central Idaho Mining & Milling Company, employer, and the State Insurance Fund, surety, on the 17th day of April, 1935, be, and hereby is, withdrawn, cancelled, annulled and held for naught, and said agreement is hereby cancelled, annulled and set aside.

"IT IS FURTHER ORDERED, AND THIS DOES ORDER, That the claimant, James Zapantis, be, and he hereby is, awarded against the defendants, Central Idaho Mining & Milling Company, employer, and State Insurance Fund, surety, and each of them, additional compensation at the rate of $13.10 a week for 99% of 162 weeks beginning on the 4th day of June, 1935.

"IT IS FURTHER ORDERED, AND THIS DOES ORDER, That said defendants and each of them pay to the State Treasurer for deposit in the Industrial Special Indemnity Fund the sum of $42.44."

The Company and State Insurance Fund appealed from that part of the award which "cancelled, annulled and held for naught" the agreement and award of April 17, 1935, and further entering an award against defendants of "additional compensation at the rate of $13.10 a week for 99% of 162 weeks beginning on the 4th day of June, 1935," and also requiring defendants to deposit in the state treasury the sum of $42.44.

The claimant has also appealed from the whole of the award and judgment, on the ground that the same was inadequate and not supported by the evidence.

The first question which arises on this appeal is directed to the jurisdiction of the Industrial Accident Board to *cancel, annul and set aside an award* made some five years prior thereto, from which no appeal was taken, and to make a new award and judgment predicated on findings inconsistent with and contradictory to the original award.

Furthermore, it must be borne in mind that more than six months after the entry of the award of April 17, 1935, the board heard an application for modification of the original award, on the ground that "a change in conditions" had taken place, as contemplated by sec. 43–1407, I. C. A.

We are confronted in the very outset of our consideration of this matter, with the problem as to whether or not the original award of April 17, 1935, became *res judicata;* and likewise, whether the order of January 30, 1936, became *res judicata* as to any change in conditions having or not having occurred *up to that time.*

In *Rodius v. Coeur d'Alene Mill Co.,* 46 Ida. 692, 696, 271 Pac. 1, this court said:

"The agreement of the employer and surety to pay the child compensation, having been approved by the board, had the same effect as an award of the board. [Citing cases.] Subject to review on appeal, an award, 'in the absence of fraud,' is 'final and conclusive as between the parties' (C. S., sec. 6270), [Sec. 43–1408, I. C. A.] except that, on applica-

tion therefor, 'on the ground of a change in conditions,' the board may make an award '*ending, diminishing or increasing* the compensation previously agreed upon or awarded.'" (Italics supplied.)

The foregoing holding has been repeatedly approved by this court. (*Boshers v. Payne*, 58 Ida. 109, 112, 70 Pac. (2d) 391; *Reagan v. Baxter Foundry & Machine Works*, 53 Ida. 722, 724, 27 Pac. (2d) 62; see, also, *McGarrigle v. Grangeville E. L. & P. Co.*, 60 Ida. 690, at 702, 97 Pac. (2d) 402.)

In the case of *Reagan v. Baxter Foundry & Machine Works*, *supra,* the holding of the Rodius case was followed and quoted at length, both as to the effect of the approval and agreement by the Industrial Accident Board and as to the finality of such approval as *res judicata*. In the latter case the court quoted from sec. 43-1408, to the effect that "An award of the board in the absence of fraud, shall be final and conclusive between the parties."

In *Barry v. Peterson Motor Co.*, 55 Ida. 702, 708, 46 Pac. (2d) 77, the Reagan-Baxter Foundry case was cited with approval and the court said:

"From a careful survey of the authorities it is apparent that a hearing because of changed conditions is limited to a modification of the award solely on that ground and no other errors may be corrected by either party." (See, also, citation of authorities under note 2 (a), page 570, 122 A. L. R.)

Here, by the order appealed from, the board specifically finds, "that there has been no change in claimant's condition." (Finding XI.) The board then proceeds to find that, originally and *at the time of the accident,* and the approval of the agreement and entry of the award, claimant's condition was much *worse* than found by the board April 17, 1935; and thereupon decides to *cancel and set aside* the original *award* and to make a *new award* dating from June 4, 1935.

The board, having originally found and held that "no change in conditions" had occurred, was without jurisdiction to vacate the award which had become final, and to thereupon hear the case *de novo* and enter a new and different award as if no award had ever been made. Of course the jurisdiction to grant relief from fraud always adheres (sec.

43–1408, I. C. A.), but there is no claim of fraud in this case.

There must be an end to litigation but that cannot be attained if, years after a judgment has been entered and has become final, and the personnel of the court or board has changed, the whole case can be reopened and passed upon anew.

The award of February 7, 1939, from which these appeals were taken, is vacated and set aside and the cause is remanded to the board. No costs awarded.

Budge, Givens and Holden, JJ., concur.

Morgan, J., deeming himself disqualified, did not sit at the hearing nor participate in the opinion.

Petition for rehearing denied.