682 P.2d 1263

**Richard L. WOODVINE,**
**Claimant-Appellant,**

v.

**TRIANGLE DAIRY, INC., Employer, and Argonaut Northwest Insurance Company, Surety, Defendants-Respondents.**

**No. 14436.**

Supreme Court of Idaho.

May 7, 1984.

Rehearing Denied July 10, 1984.

Dennia Gibala, Boise, for claimant-appellant.

John W. Barrett, and Michael Grover McPeek of Moffatt, Thomas, Barrett & Blanton, Chartered, Boise, for defendants-respondents.

DONALDSON, Chief Justice.

On November 14, 1974, while working for Triangle Dairy, Inc., claimant Richard Woodvine sustained a back injury. Timely notice of the injury was given to the employer. As a result of this injury, surgery was performed upon claimant on November 21, 1976. On April 28, 1977, Dr. Tregoning wrote a letter to Triangle Dairy's surety, Argonaut Northwest Insurance Company, in which he rated claimant at a medical impairment of 10%. Argonaut prepared a compensation agreement based on this rating. The agreement was signed by claimant and the Industrial Commission approved it on May 9, 1977.

On August 29, 1978, Dr. Tregoning increased claimant's rating to 15%. Argonaut prepared a second compensation agreement based on this rating which claimant signed and which was subsequently approved by the Commission on September 22, 1978.

Claimant continued to have trouble with his back and was admitted to the hospital. On October 22, 1979, Dr. Tregoning performed a spinal fusion on claimant. The doctor indicated in a letter to Argonaut that claimant's impairment rating had again increased to 20%. Argonaut prepared a third compensation agreement reflecting this increase. Claimant signed the agreement and the Commission approved it on June 19, 1980. All the medical expenses incurred by claimant from the date of the injury were paid by Argonaut. In addition, Argonaut paid claimant total temporary disability benefits from November 17, 1974, through April 28, 1977, and from October 19, 1979, through May 16, 1980.

Claimant first sought counsel on this matter in August, 1980. On September 29, 1980, claimant filed an application for hearing to request further compensation and award pursuant to I.C. § 72–706(2), or alternatively, to reopen and modify the third compensation agreement pursuant to I.C. § 72–719. Claimant alleged that he was in fact 100% disabled according to the "odd lot" doctrine.[1] In addition, claimant contended that the third compensation agreement could be reviewed since it was based solely on an impairment rating without consideration of other non-medical factors which bear on permanent disability.

A hearing was held on March 16, 1981, after which the referee made Findings of Fact and Conclusions of Law which the Commission adopted and supplemented with additional Conclusions of Law. The referee found that claimant was indeed a member of the "odd lot" category and,

therefore, totally and permanently disabled. However, the referee went on to conclude that the limitation period of I.C. § 72–706(2) was inapplicable, and that the five-year limitation period for modification of an award contained in I.C. § 72–719 had already expired. In addition, the Commission concluded that the third compensation agreement was final and conclusive as to the nature and extent of claimant's disability as it existed at the time the agreement was approved. The Commission stated that the only exception to the res judicata effect of such agreements would be in a situation where the parties and the Commission expressly reserved the determination of some particular component of permanent disability for a later date. Since that was not the case here, the Commission denied the claim for additional compensation and award. This appeal followed.

The appeal presents the following three issues: (1) Is I.C. § 72–706(2) inapplicable, and if so, had the limitation period contained in I.C. § 72–719 expired by the time claimant filed his application for hearing? (2) Is the third compensation agreement which was approved on June 19, 1980, final and conclusive regarding the nature and extent of claimant's then existing permanent disability? (3) Is the claimant entitled to attorney fees on appeal?

## I.

█ The Industrial Commission apparently perceived that claimant's Application for Hearing was based solely on the modification provisions of I.C. § 72–719.[2] Consequently, the Commission failed to consider

---

1. For cases explaining the "odd lot" doctrine, *see* *Lyons v. Industrial Special Indem. Fund,* 98 Idaho 403, 565 P.2d 1360 (1977); *Francis v. Amalgamated Sugar Co.,* 98 Idaho 407, 565 P.2d 1364 (1977).

2. I.C. § 72–719 reads as follows:
"72–719. **Modification of awards and agreements—Grounds—Time within which made.—** (1) An application made by a party in interest filed with the commission at any time within five (5) years of the date of the accident causing

the injury or date of first manifestation of an occupational disease, on the ground of a change in conditions, the commission may, but not oftener than once in six (6) months, review any order, agreement or award upon any of the following grounds:
"(a) Change in the nature or extent of the employee's injury or disablement; or
"(b) Fraud.
."(2) The commission on such review may make an award ending, diminishing or increasing the compensation previously agreed upon or

I.C. § 72–706(2) when addressing the issue of whether claimant's application was timely filed. In concluding that claimant's application was barred because it was filed after the expiration of the five-year limitation period of I.C. § 72–719, the Commission never mentioned the fact that the agreement itself was executed and approved after the expiration of this same five-year period. There is some question as to whether the act of entering into an agreement after the expiration of the modification period may constitute a waiver of that period by the employer and/or surety. We need not address that question in this case, however, because we hold that the provisions of I.C. § 72–706(2) are applicable.

I.C. § 72–706(2) provides as follows:

"(2) When compensation discontinued. When payments of compensation have been made and thereafter discontinued, the claimant shall have five (5) years from the date of the accident causing the injury or date of first manifestation of an occupational disease, or, if compensation is discontinued more than five (5) years from the date of the accident causing the injury or the date of first manifestation of an occupational disease, within one (1) year from the date of the last payment of compensation, within which to make and file with the commission an application requesting a hearing for further compensation and award."

Following the approval of the third compensation agreement, Woodvine filed an Application for Hearing requesting further compensation on September 29, 1980. This was approximately five years and ten months following the date he was injured. Thus, Woodvine filed his application after the strict five-year period of I.C. § 72–

706(2) had expired. However, that section contains an alternative period which is applicable in those cases where the payment of compensation is discontinued more than five years after the date of the injury. "Compensation" is defined in I.C. § 72–102(5) as follows: " 'Compensation' used collectively means any or all of the income benefits and the medical and related benefits and medical services." In the case at bar, Argonaut discontinued paying total temporary disability benefits on May 16, 1980—five years and six months after the date of Woodvine's injury. Thus, the alternative limitation period should be applied because these payments constitute compensation which was discontinued more than five years after the date of the injury. According to the statute, when payment of compensation is discontinued more than five years after the date of the injury, the claimant has one year following the date of the last payment in which to file an application for further compensation and award. Consequently, Woodvine had one year from May 16, 1980, within which to file his application for hearing. By filing on September 29, 1980, he was well within this one-year period and, therefore, not barred.

■■ Respondents contend that I.C. § 72–706(2) applies only to situations where the employer/surety began to make voluntary payments and subsequently discontinued those payments. They argue that since the total temporary disability benefits were paid pursuant to the third compensation agreement, they were not voluntary payments and, therefore, I.C. § 72–706(2) is inapplicable. We disagree.

Although the third compensation agreement, approved on June 19, 1980, set out the total temporary disability payments as part of the award to which claimant was

awarded, subject to the maximum and minimum provided in this law, and shall make its findings of fact, rulings of law and order or award, file the same in the office of the commission, and immediately send a copy thereof to the parties.

"(3) The commission, on its own motion at any time within five (5) years of the date of the accident causing the injury or date of first manifestation of an occupational disease, may review a case in order to correct a manifest injustice.

"(4) This section shall not apply to a commutation of payments under section 72–404."

entitled, those payments were made prior to the approval of the compensation agreement. As such, the total temporary disability payments were not paid pursuant to the approved compensation agreement. In fact, the approved compensation agreement simply reaffirmed that the payments had been made. Thus, Argonaut voluntarily made these payments and later discontinued making them, bringing this case squarely within the application of I.C. § 72–706(2). We conclude that I.C. § 72–706(2) was applicable, and that Woodvine complied with that section when he filed his Application for Hearing on September 29, 1980. Therefore, we hold that Woodvine's Application for Hearing was not barred by either I.C. § 72–719 or I.C. § 72–706(2).

## II.

The Commission concluded that the third compensation agreement "is final and conclusive regarding the nature and extent of the claimant's permanent disability." Woodvine contends that this conclusion is erroneous. Woodvine argues that the third compensation agreement was final and conclusive only as to his permanent impairment because only medical factors were considered by the Commission when it approved the agreement. In order to resolve this issue, we must consider two pairs of statutes: (A) I.C. §§ 72–711 and 72–718; and, (B) I.C. §§ 72–424 and 72–425.

### A) I.C. §§ 72–711 and 72–718:

I.C. § 72–711 authorizes the use of compensation agreements and provides that, upon approval of the Industrial Commission, a compensation agreement is to be considered an award for all purposes. I.C. § 72–718 provides that a decision of the Commission (after any rehearing or reconsideration), if not appealed and in the absence of fraud, is "final and conclusive as to all matters adjudicated by the commission." These two statutes provide the foundation for our analysis of the finality and conclusiveness of the third compensa-

tion agreement. (A copy of this compensation agreement has been included herein as Appendix A.)

The Commission, in support of its conclusion that the third compensation agreement was final and conclusive as to claimant's permanent disability, cited I.C. § 72–711 and stated:

"The Idaho Supreme Court consistently has held that an approved compensation agreement is *res judicata* (final and conclusive) as to all issues which were raised or which might have been raised at the time the agreement was approved, subject to modification upon a showing of fraud or a change in condition. *Rodius v. Coeur d'Alene Mill Co.*, 46 Idaho 692, 271 P. 1 (1928); *Reagan v. Baxter Foundary & Machine Works*, 53 Idaho 722, 27 P.2d 62 (1933); *Zapantis v. Central Idaho Mining and Milling Co.*, [61 Idaho 660, 106 P.2d 113 (1940)]; and *Nitkey v. Bunker Hill & Sullivan Mining & Concentrating Co.*, 73 Idaho 294, 251 P.2d 216 (1952)."

The Commission also cited I.C. § 72–718 as support for its conclusion. Although the above-quoted statement by the Commission was correct in regard to the cited line of cases, the Commission failed to observe a fundamental change in the law which occurred subsequent to our decisions in those cases.

The statutory law existing prior to 1971, provided that an "award of the board in the absence of fraud, shall be final and conclusive between the parties," if not appealed. *See* former I.C. § 72–608 *repealed by* 1971 Idaho Sess.Laws ch. 124, section 2, p. 422. Based upon that language, this Court concluded (as stated by the Commission in the indented quote above) that an award of the Commission was res judicata; *i.e.*, final and conclusive as to all matters that were, or could have been, raised. However, in 1971, the legislature repealed the existing workmen's compensation laws and enacted new workmen's compensation statutes. Since that time, I.C. § 72–718 has provided that

"[a] decision of the commission, in the absence of fraud, shall be final and conclusive *as to all matters adjudicated* by the commission" if not appealed. (Emphasis added.)

A comparison of the statute existing prior to 1971, and the statute enacted in 1971, discloses that the two are practically identical except for the addition of the phrase "as to all matters adjudicated" in the current statute. When the legislature changes the language of a statute, it is presumed that they intended to change the application or meaning of that statute. *Hawkins v. Chandler,* 88 Idaho 20, 396 P.2d 123 (1964); *see also Lincoln County v. Fidelity & Deposit Co. of Maryland,* 102 Idaho 489, 632 P.2d 678 (1981). We conclude that the legislature, by adding the phrase "as to all matters adjudicated," intended that decisions of the Commission be final and conclusive *only* as to those matters *actually adjudicated.* This is a departure from the concept of "pure res judicata," applied prior to 1971, which accorded decisions by the Commission finality and conclusiveness as to all matters which were, *or could have been,* adjudicated. Therefore, the third compensation agreement is only final and conclusive as to those matters actually considered by the Commission.[3]

### B) I.C. §§ 72–424 & 72–425:

Having decided that the third compensation agreement is final and conclusive only as to those matters actually considered, we must now decide whether the agreement was final and conclusive as to claimant's

permanent disability (as urged by the Commission) or whether the agreement was final and conclusive only as to claimant's permanent impairment (as urged by Woodvine).

A permanent impairment rating is "a medical appraisal of the nature and extent of the injury ... as it affects an injured employee's personal efficiency in the activities of daily living." I.C. § 72–424. I.C. § 72–425, as it read at the time of this hearing, provided that a permanent disability rating is "an appraisal of the injured employee's present and probable future ability to engage in gainful activity as it is affected by the medical factor of permanent impairment *and by nonmedical factors* such as age, sex, education, economic and social environment, training and usable skills." (Emphasis added.) *See Curtis v. Shoshone County Sheriff's Office,* 102 Idaho 300, 629 P.2d 696 (1981).

The Commission concluded that "the award approved by the Commission was an award for permanent disability." The Commission based this conclusion on two sentences contained in the compensation agreement. The first sentence is contained in Part I of the agreement: "Overpayment for time loss is to be credited against the disability award." The second sentence is a general provision following Part III of the agreement: "The employer and surety agree to pay, and the employee agrees to accept, the disability award as set forth above in periodic installments."

However, the Commission failed to discuss the language of Part II, which is the specific Part providing the award in dispute here. Part II of the agreement states:

**3.** We are aware of our two recent opinions which some may erroneously read to be contradictory to this conclusion. However, such is not the case. Our opinion in *Sines v. Appel,* 103 Idaho 9, 644 P.2d 331 (1982), referred to res judicata in a similar setting but did so only to hold that the award of the Commission was final only to those parties who entered into the compensation agreement. In *Banzhaf v. Carnation Co.,* 104 Idaho 700, 662 P.2d 1144 (1983), while referring to res judicata, we stated

that in a workmen's compensation proceeding, one is prevented from relitigating only those matters "finally decided in an earlier decision of the Commission." *Id.* at 703, 662 P.2d at 1147. Thus, although both cases referred to res judicata, neither of those cases held that a decision of the Commission is final and conclusive as to matters which could have been, but were not, adjudicated. We, therefore, find these cases to be consonant with our opinion here.

"THE EMPLOYEE HAS BEEN GIVEN A PERMANENT DISABILITY AND/OR IMPAIRMENT RATING OF ...." It is this specific language which causes us to conclude that the compensation agreement is ambiguous. We are unwilling, and it would be improper for us, to presume that "AND" is the controlling word and that "OR" should be ignored, or vice versa. Since we are unable to determine the intent of the parties from a reading of the compensation agreement, we find it impossible to discern from the agreement whether the award was for permanent disability or permanent impairment.

■ Finding of Fact VIII states in part that the rating contained in the agreement "was based solely on the doctor's rating of permanent partial impairment equal to 20% of a whole person; *nonmedical factors* including, but not limited to, the claimant's age, education, training, work experience, and skills *were not considered* in making that rating." (Emphasis added.) Since I.C. § 72–425 (as it existed at the time of this hearing) required that nonmedical factors be considered in arriving at a permanent disability rating, and since Finding of Fact VIII states that nonmedical factors were not considered, it is clear that the award provided by the compensation agreement was based only upon a permanent impairment rating. However, that fact alone does not necessarily indicate that the award was for permanent impairment only. Whether the award was for permanent impairment or permanent disability is dependent on the actual agreement of the parties. The determination of what the parties to a contract have actually agreed to is a question of fact for the trier of fact to determine. *Pollard Oil Co. v. Christensen*, 103 Idaho 110, 645 P.2d 344 (1982); *Int'l. Engineering Co. v. Daum Industries, Inc.*, 102 Idaho 363, 630 P.2d 155

(1981); *Pocatello Indus. Park Co. v. Steel West, Inc.*, 101 Idaho 783, 621 P.2d 399 (1980). Therefore, we reverse the conclusion of the Commission that the award was for permanent disability, and remand to the Commission for a determination of whether the parties actually agreed that the award was for permanent impairment, or whether the parties agreed that the award was for permanent disability. Should the Commission find that the compensation agreement provided claimant with a permanent disability award, then the agreement is final and conclusive as to claimant's permanent disability. However, should the Commission find that the compensation agreement provided claimant with a permanent impairment award only, then the agreement is not final and conclusive as to claimant's permanent disability, and the Commission is instructed to enter an award for claimant consistent with Conclusion of Law III that claimant is a member of the "odd lot" category and, therefore, "is totally and permanently disabled as a result of his accident of November 14, 1974 and his subsequent back surgeries." [4]

### III.

■ Claimant contends that he is entitled to attorney fees pursuant to I.C. § 72–804 because respondents have contested claimant's claim for compensation without reasonable grounds. We disagree, and feel that respondents had legitimate and good faith bases for contesting Woodvine's claim.

The decision of the Industrial Commission is reversed and remanded with instructions.

Costs to claimant-appellant.

No attorney fees on appeal.

BISTLINE and HUNTLEY, JJ., and McFADDEN, J. Pro Tem., concur.

---

**4.** We note that since the intent of the parties to the compensation agreement is what ultimately determines whether the award is for permanent impairment or permanent disability, in the future a form of agreement which more clearly indicates the intention of the parties would be desirable.

BAKES, Justice, dissenting in part and concurring specially:

I dissent as to Part I and concur in Part III of the majority opinion. With regard to Part II, I concur with that portion which concludes that the compensation agreement is ambiguous and that the Industrial Commission, on remand, should decide as a question of fact, rather than as a matter of law, whether the parties, by executing the compensation agreement, intended to settle the claimant's disability award, or only the claimant's impairment rating. Since that was an issue which was not specifically litigated when this matter was previously before the Industrial Commission, the commission should permit the parties to submit additional evidence, both as to the parties' intentions in executing the agreement and any other extrinsic evidence bearing upon the issue of what the parties intended when they entered into the compensation agreement.

BEFORE THE INDUSTRIAL COMMISSION OF THE STATE OF IDAHO

### COMPENSATION AGREEMENT

RICHARD L. WOODWINE , Employee-Claimant    IC Claim No. 74-100557

TRIANGLE DAIRY, INC. , Employer    Surety Claim No. TX-27160

ARGONAUT NORTHWEST INSURANCE COMPANY Surety

We, the above named parties hereto, agree that on ____NOVEMBER 14, 1974____
the employee sustained an injury in the course of his employment with the employer, and as a result of that accident and injury is entitled to Workmen's Compensation benefits as hereinafter set forth:

I. TIME LOSS PAID: (Attach separate sheet if necessary)

| FROM | TO | WEEKS | DAYS | TYPE | RATE | AMOUNT DUE | PAID |
|------|----|-------|------|------|------|------------|------|
| PREVIOUSLY PAID | | | | | | $17,503.04 | |
| 10-19-79 | 12-31-79 | 10 | 4 | TTD | $156.33 | 1,652.66 | |
| 01-01-80 | 05-16-80 | 19 | 4 | TTD | 163.62 | 3,202.26 | |
| | | | | | TOTAL | $22,357.96 | $22,428.10 |

OVERPAYMENT ON TOTAL TEMPORARY DISABILITY - $70.14
PREVIOUSLY PAID PERMANENT PARTIAL DISABILITY - $5,362.50

Any amount still due for time loss is to be paid now. Overpayment for time loss is to be credited against the disability award.

II. THE EMPLOYEE HAS BEEN GIVEN A PERMANENT DISABILITY AND/OR IMPAIRMENT RATING OF: 20% as compared to the whole body, of which 15% as compared to the whole body has previously been paid, leaving a balance of 5% as compared to the whole body; being 25 weeks at $71.50 per week,

for an award of ____$1,787.50 - $70.14____ = $ 1,717.36
(Less advances or overpayment)

III. MEDICAL PAYMENTS MADE TO DATE: (Attach separate sheet if necessary)

| TO | AMOUNT | TO | AMOUNT |
|----|--------|----|--------|
| PREVIOUSLY PAID | $5,815.73 | | |
| THE ORTHOPEDIC ASSOCIATES | 1,874.00 | | |
| BROWNFIELDS | 425.00 | | |
| ST. ALPHONSUS HOSPITAL | 3,050.92 | | |
| BOISE ANESTHESIA | 270.00 | | |
| ST. ALPHONSUS RADIOLOGY | 19.60 | | |
| DR. NAEVE | 50.00 | TOTAL | $11,505.25 |

The employer and surety agree to pay, and the employee agrees to accept, the disability award as set forth above in periodic installments.

This agreement is subject to Section 72-719 of the Idaho Workmen's Compensation Law; it is not a full and final release; and the employee can re-open the claim upon a change in condition within five years of the date of the accident. The employee should contact the surety as soon as possible if a change in condition develops or if further medical care is needed.

THIS AGREEMENT IS EFFECTIVE AND BECOMES AN AWARD ONLY WHEN IT HAS BEEN APPROVED BY THE INDUSTRIAL COMMISSION.

INDUSTRIAL COMMISSION RECEIVED 80 JUN 19 AM 10: 09

APPROVED _____ JUN 19 1980 _____

INDUSTRIAL COMMISSION

_Gerald A. Geddes_
Chairman

_Nichall_
Member

APPENDIX "A"            Member

Date: _Jun. 17. 1950_

_Richard L. Woodvine_, Employee-Claimant
TRIANGLE DAIRY, INC.
ARGONAUT NORTHWEST         , Employer
INSURANCE COMPANY          , Surety

by _____

ATTEST _Pearl Brandt_         CLM 621 R-4
Assistant Secretary