787 P.2d 225

Houston **WALTERS,**
Claimant–Appellant,

v.

**BLINCOE'S MAGIC VALLEY PACKING
COMPANY, Employer, and General In-
surance Company of America, Surety,
Defendants–Respondents.**

No. 17419.

Supreme Court of Idaho.

Jan. 27, 1989.

On Rehearing Feb. 14, 1990.

Emil F. Pike, Jr., Twin Falls, for claim-
ant-appellant.

Imhoff & Lynch, Boise, for defendants-
respondents. Thomas P. Baskin, III, ar-
gued.

JOHNSON, Justice.

This is a worker's compensation case.
The primary issue presented in this appeal
is whether the claimant (Walters) was enti-
tled to a hearing to determine additional
disability. The application for hearing was
filed more than five years after the acci-
·dent that caused the claimant's injury.
Walters asserts that the timeliness of the
application should be governed by I.C.
§ 72–706(2), because medical benefit pay-
ments were made within one year before
the application was filed. Blincoe's Magic
Valley Packing Company (the employer)
and General Insurance Company of Amer-
ica (the employer's surety) contend that

I.C. § 72–719 governs the case and that the application was filed too late. The employer and its surety base their position on a compensation agreement entered into with Walters more than five years before the application was filed. Walters also asserts that, by its representations to and dealings with Walters, the employer's surety waived or tolled the time within which Walters was required to file an application for a hearing. We disagree with Walters and affirm the order of the Commission dismissing the application.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

Walters suffered an injury to his back while he was working for the employer on July 23, 1979. As a result of this injury, he received a physical impairment rating of 20 percent of a whole person. Walters and the employer's surety entered into a compensation agreement (the agreement) on June 27, 1980. The agreement was approved by the Commission on July 10, 1980. The agreement stated that Walters had been given "A PERMANENT DISABILITY AND/OR IMPAIRMENT RATING OF: 20% whole man." The records of the Commission show that Walters was awarded $10,615.00 as partial permanent disability, which was fully paid by July 15, 1980.

Walters began experiencing increasing back pain in July of 1984. He contacted his physician, who was unable to see him until August 14, 1984. Surgery was performed on Walters' back in April of 1985 and in January of 1986. The employer's surety paid the medical expenses related to these surgeries. The last payment of these medical expenses was made on December 28, 1987.

On September 25, 1986, Walters filed an application for hearing claiming "further permanent partial impairment, further partial disability" and contending "that he is totally and permanently disabled and claims compensation for further and additional medical care." The employer and its surety filed a motion to dismiss stating

that the sole issue of law was whether or not I.C. § 72–706 and § 72–719 barred Walters from having a hearing to determine if he was entitled to further income benefits for permanent disability.

Walters opposed the motion to dismiss primarily on the ground that the medical benefit payments made by the employer's surety within one year before the application for hearing entitled him to a hearing under I.C. § 72–706(2). Walters submitted an affidavit in opposition to the motion to dismiss setting out the basic facts concerning his application. He also stated that he "had been advised by the surety that his back would be taken care of" and "assumed by such words and subsequent conduct that the surety would ultimately pay him further benefits as appropriate for income, disability and impairment." Walters subsequently testified in his deposition that he had received a letter dated January 25, 1985, from the employer's surety stating: "The medical portion of your claim does remain open. However, the statute is (sic) run on compensation payments. Therefore, only future medical payments as relates to the industrial claim of 7–23–79 will be paid." Walters testified in his deposition that from 1984 on, the employer's surety had not led him to believe that he would receive anything other than his medical benefits.

The Commission initially denied the motion to dismiss, without stating its reason for doing so. The employer and its surety then moved for reconsideration and supplemented the support for the motion to dismiss with a copy of office notes from the office of Walters' physician indicating that in early 1985 the employer's surety had indicated that they would pay for the surgery "but will not pay time loss or additional impairment to Mr. Walters." These notes also indicate that Walters was informed of this by the office of his physician. The Commission then reversed its initial ruling on the motion to dismiss and dismissed the application for hearing "without prejudice." Walters filed this appeal from the dismissal.

## II.

REGARDLESS OF WHETHER I.C. § 72–719 OR I.C. § 72–706(2) GOVERNS THIS CASE, WALTERS IS NOT ENTITLED TO A HEARING.

Walters asserts that under I.C. § 72–706(2) he was entitled to request a hearing within one year after the payment of medical expenses by the employer's surety. The employer and its surety contend that it is I.C. § 72–719, and not I.C. § 72–706(2), that governs this case. They also contend that even if I.C. § 72–706(2) is the applicable statute, Walters is not entitled to a hearing to determine additional disability.

A compensation agreement approved by the Commission is equivalent to an award under the worker's compensation law. I.C. § 72–711; *Sines v. Appel*, 103 Idaho 9, 12, 644 P.2d 331, 333 (1982). An award of the Commission that is not appealed to this Court may only be modified as provided in I.C. § 72–719. I.C. § 72–718. I.C. § 72–719 includes a provision that "at any time within five (5) years of the date of the accident causing the injury ... the commission may ... review any order, agreement or award" on the ground of "[c]hange in the nature or extent of the employee's injury or disablement."

I.C. § 72–706(2) includes a provision that "if compensation is discontinued more than five (5) years from the date of the accident causing the injury," a claimant may file an application requesting a hearing for further compensation and award "within one (1) year from the date of the last payment of compensation."

Walters argues that the decision of this Court, in *Woodvine v. Triangle Dairy, Inc.*, 106 Idaho 716, 682 P.2d 1263 (1984), should be applied to this case to cause us to hold that the agreement is ambiguous. The printed portions of the agreement are the same in this case as they were in *Woodvine*. Specifically, both agreements include the provision: "THE EMPLOYEE HAS BEEN GIVEN A PERMANENT DISABILITY AND/OR IMPAIRMENT RATING OF...." In *Woodvine* this court found that the agreement was ambiguous as to whether the rating was for disability or impairment. This Court pointed out that the Commission found "that the rating contained in the agreement 'was based solely on the doctor's rating of permanent partial impairment ...; *nonmedical factors* including, but not limited to, the claimant's age education, training, work experience, and skills *were not considered* in making that rating.' (Emphasis added.)" 106 Idaho at 722, 682 P.2d at 1269. This Court said that this made it clear that the award provided by the agreement was based only upon a permanent impairment rating, but that this fact alone did not necessarily indicate that the award was for permanent impairment only. This Court remanded the case to the Commission for a determination of whether the parties intended the award to be for permanent impairment or for permanent disability.

Here, there is no finding that only the medical factor of impairment was considered in arriving at the rating in the agreement. In addition, there are other facts indicating that the rating was intended to be for permanent disability. The records of the Commission indicate that the award was for permanent partial disability. The application for hearing filed by Walters states that he is claiming "further partial disability." These facts tend to convince us that the rating in the agreement was for permanent disability and not for permanent impairment. However, *Woodvine* held that this determination is one of fact that is to be made by the Commission and not by this court.

The decision of the Commission in this case was to grant a motion to dismiss. No findings were made and no explanation was given by the Commission for the decision. By virtue of the Idaho Constitution, the statutes of this state, and the decisions of this Court, in appeals from the Commission we may review only (1) questions of law and (2) findings of fact to determine whether they are based on substantial competent evidence. Idaho Const. art. 5., § 9; I.C. § 72–732; and *e.g., Greenrod v. Parris*, 115 Idaho 109, 765 P.2d 134 (1988).

We note that Walters did not assert the ambiguity of the agreement in opposing the motion to dismiss. Therefore, we would ordinarily decline to consider this issue. However, in order to explain the basis for our decision, we will assume that this issue was preserved for appeal.

The order of the Commission dismissing the application for hearing does not advise us on what legal grounds the dismissal was based. The dismissal "without prejudice" leads us to the conclusion that the Commission did not intend to foreclose the possibility that Walters was entitled to a hearing. This may have been an invitation to Walters to raise the ambiguity of the agreement as an issue in a subsequent application for hearing. However, we conclude that whether the agreement was intended to compensate Walters for permanent disability or only for permanent impairment, Walters was not entitled to a hearing.

■ I.C. § 72–719 would apply to the facts here, if the agreement was intended to provide compensation to Walters for permanent disability. In that event, since the application for a hearing was not filed within five years of the date of the accident causing injury, Walters was barred from further relief. This conclusion is supported by the language of I.C. § 72–719 that gives the Commission the authority to review and modify an award, if the application is filed within five years of the date of the accident.

■ I.C. § 72–706(2) would apply to the facts here, if the agreement was not intended to provide compensation to Walters for permanent disability. In that event, I.C. § 72–706(2) allows the filing of an application for a hearing within five years after the accident causing the injury or within one year from the date of the last payment of compensation, "if compensation is discontinued more than five (5) years from the date of the accident causing the injury." This latter portion of the statute referring to the discontinuance of compensation necessarily implies that the compensation was being paid on the fifth anniversary of the accident and was thereafter discontinued. That was the case in *Wood-*

*vine.* It is not the case here. All of the income benefits provided in the agreement were paid in 1980. Medical benefits were not being paid to Walters on July 23, 1984 —the fifth anniversary of the accident. No compensation was "discontinued more than five (5) years from the date of the accident causing the injury." Therefore, even if I.C. § 72–706(2) applied to this case, Walters would not be entitled to a hearing.

### III.

### THE EMPLOYER'S SURETY DID NOT WAIVE OR TOLL THE TIME WITHIN WHICH WALTERS WAS REQUIRED TO FILE AN APPLICATION FOR HEARING.

■ Walters asserts that the employer's surety, by its representations to and dealings with him, waived or tolled the time within which he was required to file an application for hearing. We disagree.

The alleged representations of the employer's surety that Walters presented to support this position were made more than five years after the accident that caused his injury. These representations could not therefore be a basis for preventing the employer's surety from asserting the bar of either I.C. § 72–719 or § 72–706(2). In addition, Walters' own testimony indicates that the employer's surety did not represent to him that the surety would provide further income payments for disability or impairment. While his affidavit seems to state that these representations were made, his deposition testimony is to the contrary.

### IV.

### CONCLUSION.

Because we conclude that Walters was not entitled to a hearing regardless of whether I.C. § 72–719 or § 72–706(2) governs, we affirm the order of the Commission dismissing the application for hearing.

Costs to respondents.

SHEPARD, C.J., and BAKES J., concur.

BAKES, Justice, concurring specially:

I concur fully with the Court's opinion and write only to emphasize that where there is a compensation agreement entered into between the parties, which has been approved by the commission, it is a final decision and award of the commission which is conclusive as to all matters adjudicated by the commission, I.C. § 72–718. It can only be reopened within the times and under the conditions set out in I.C. § 72–719. However, if, because of ambiguity, a compensation agreement approved by the commission is determined not to adjudicate permanent disability, but rather only permanent impairment, *see Woodvine v. Triangle Dairy, Inc.,* 106 Idaho 716, 682 P.2d 1263 (1984), then the issue of disability would still be open, and the agreement and award would not be final under 72–718. Then, as the majority opinion correctly spells out, "In that event, I.C. § 72–706(2) allows the filing of an application for a hearing within five years after the accident causing the injury or within one year from the date of the last payment of compensation, 'if compensation is discontinued more than five (5) years from the date of the accident causing the injury.'" *Ante* at 228.

HUNTLEY, Justice, concurring specially.

I write separately to focus the litigants and the Commission on one aspect of our ruling today. We have affirmed a "dismissal without prejudice." We have further ruled that on the basis of the facts *in this record* claimant has no basis for recovery.

If there were a basis for claimant to re-file under *Woodvine* at the time of the Commission's order, the appeal has tolled any further running of the statute, and this opinion does not preclude such re-filing.

BISTLINE, Justice concurring only with HUNTLEY, Justice special concurrence, and dissenting.

I dissent from the majority's narrow, hypertechnical construction of I.C. § 72–706(2). Specifically, I object to the following judicial gloss that is placed on the statute:

This latter portion of the statute referring to the discontinuance of compensation *necessarily implies* that the compensation was being paid on the fifth anniversary of the accident and was thereafter discontinued. That was the case in *Woodvine.* It is not the case here.

Maj.Op., p. 242, 787 P.2d p. 228 (emphasis added).

No reason or rationale is given to support the "necessary implication" that compensation must be paid on the fifth anniversary of the accident, other than that the statement is an *ipse dixit,* or judicial decree. What is the magic about payment being in progress on the "fifth anniversary"? I suppose if Mr. Walters had the good fortune to have scheduled surgery to relieve increased back pain earlier than July 1984, the majority might not now deny him a hearing.

Because *the facts* in *Woodvine,* regarding dates of compensation payment, differ from those here is not a basis supporting the majority's construction of the statute. The tail does not wag the dog. The *Woodvine* facts create a distinction without a difference. The *Woodvine* majority placed no emphasis on the claimant's receiving compensation on the "fifth anniversary."

"Compensation" includes medical benefits, I.C. § 72–102(5), *Woodvine, supra,* and the fact that Blincoe's surety last paid medical expenses on December 28, 1987, surely brings this case within I.C. § 72–706(2)'s ambit. The crabbed, technical reading of the statute offered by today's majority violates a cardinal principal of worker's compensation law endorsed by cases too numerous to cite—the act is to be construed liberally in favor of a claimant since the humane purposes which it seeks to serve leave no room for narrow, technical construction. *See, e.g., Hattenburg v. Blanks,* 98 Idaho 485, 567 P.2d 829 (1977).

The act has been revised extensively and interpreted variously for over 60 years. It's not surprising, as here, that gray areas arise where the statutes cannot anticipate and definitively encompass all possible fac-

tual situations. That is why the rule of liberal construction is mandated.

## ON REHEARING

Rehearing was granted on the petition of Walters. Following the rehearing, we adhere to our original opinion with some additions. On rehearing it was suggested by the employer and its surety that our opinion implicitly overruled *Steinebach v. Hoff Lumber Co.*, 98 Idaho 428, 566 P.2d 377 (1977). We disagree.

In *Steinebach* we held that what was then I.C. § 72–407 (now I.C. § 72–706 in an amended form) "contemplates a bar to claims for compensation except those based on necessary medical payments claims which are made within a reasonable time of the injury." 98 Idaho at 432, 566 P.2d at 381. This conclusion was based on a reading of what was then I.C. § 72–307 (now I.C. § 72–432(1)). This statute provides:

> The employer shall provide for an injured employee such reasonable medical, surgical or other attendance or treatment, nurse and hospital service, medicines, crutches and apparatus, as may be required by the employee's physician or needed immediately after an injury or disability from an occupation disease, *and for a reasonable time thereafter.* If the employer fails to provide the same, the injured employee may do so at the expense of the employer. (Emphasis added.)

■ To eliminate any confusion there may be about the continued viability of *Steinebach* following our decision in this case and in *Ryen v. City of Coeur d'Alene*, 115 Idaho 791, 770 P.2d 800 (1989), we hold that by these decisions we did not intend to overrule *Steinebach*. I.C. § 72–432(1) specifically provides for the obligation of the employer to pay medical benefits. As to when these medical benefits must be paid, I.C. § 72–432(1) takes precedence over I.C. § 72–706(2), which deals generally with all matters of compensation. *Steinebach*, 98 Idaho at 431, 566 P.2d at 380. Because medical benefits are included in the definition of compensation under I.C. § 72–102(5), the payment of medical benefits under I.C. § 72–432(1) must be taken into account under I.C. § 72–706(2) to determine whether compensation was being paid when the limitation period provided in I.C. § 72–706(2) expired. However, this does not mean that I.C. § 72–706(2) controls whether an employee is entitled to compensation in the form of medical benefits after the expiration of this limitation period. As to this question, the more specific provisions I.C. § 72–432(1), as interpreted in *Steinebach*, controls.

Costs on rehearing to respondents.

BAKES, C.J., BOYLE and McDEVITT, JJ., concur.

BISTLINE, Justice, dissenting.

Bistline, J. continues to adhere to the views expressed in the January 1989 opinions of Huntley, J. and Bistline, J. It was my thought then, and continues to be, that the Court has allowed itself to become mired down in attempting to make perfect sense of what now is accepted as an extremely complex set of statutory provisions in the Worker's Compensation Law, I.C. § 72–101 *et seq.* Of course, the Court does have to wrestle with the legislature's statutory scheme, and more often than not without any insight as to the legislative thinking or the lobbying pressures to which it has been subjected. All of this is understandable. What is not understandable is that, lost in the Court's unravelling process is the guiding beacon which should be reminding the Court that:

> Process and procedure under the Workmen's Compensation Act are designed to be as summary and simple as is reasonably possible. I.C. § 72–708. As this Court has held many times, the Act is to be construed liberally in favor of a claimant. The humane purposes which it seeks to serve leave no room for narrow, technical construction. *In re Haynes*, 95 Idaho 492, 511 P.2d 309 (1973); *Smith v. University of Idaho*, 67 Idaho 22, 170 P.2d 404 (1946).

. . . .

The whole idea is to get away from cumbersome procedures and technicalities of pleading so that, to the greatest extent possible, claims for compensation can be decided *on their merits.*

*Hattenburg v. Blanks,* 98 Idaho 485, 486, 567 P.2d 829, 830 (1977). (emphasis added).

Paraphrasing slightly from our nation's Pledge of Allegiance, it is suggested that this Court strive to become "one state with liberality and justice for all," especially for working people who become injured through no fault of their own.